The State of Ohio, Appellee, v. Thomas, Appellant.

[Cite as State v. Thomas (1973), 33 Ohio App. 2d 7.]

(No. 31632—Decided January 11, 1973.)

*Mr. John T. Corrigan,* for appellee.
*Mr. James R. Willis,* for appellant.

Day, J. The defendant Thomas was convicted in the Court of Common Pleas of possession for sale and sale of narcotics. She appealed to this Court assigning three errors:

"(1) The defendant was denied due process of law and deprived of a fair trial as a consequence of certain gratuitous remarks made by the Court, which remarks perforce bolstered, in face of the all-out effort being made by the defense to destroy, the credibility of the State's chief witness. (Here reference is made to the fact that during the cross examination of the police officers, and during the cross examination of the police informant as to any representation that may have been made to the informant with reference to his pending request for probation, the Court

8

went outside the evidence by informing the jury that he was the judge who would be considering this probation request and that there was no necessity for anyone to bring to the attention of the Court the extent of the informant's cooperation. The Court further bolstered their credibility by saying no one could make any promises for him. The upshot of this being that the defendant was unnecessarily prejudiced by the impermissible restriction these remarks by the Court placed on defense efforts to impeach these witnesses' credibility. Granted, it is unquestionably true that were binding on the Court [sic]. Still this does not mean as the Court's remarks clearly states, that they could not have made the representation.)

"(2) The defendant was deprived of a fair trial by virtue of a certain prejudicial remark made by the Court while overruling a defense objection to an improper question asked by the State. (Here specific reference is made to a question asked by the prosecutor during his cross examination of Detective Gaughan, who had been asked on direct if a named person was an employee of the bar owned by the defendant and her husband, and if it was not a fact that this person had been arrested and convicted of trafficking in narcotics. The prosecutor's question asked the detective to tell the source of this person's supply. The resulting prejudice was created both by the fact that the objection was erroneously rejected in summary fashion, and by the fact that the Court's remark that the defense "had opened the door." This statement artificially created an impermissible inference that was so prejudicial that the subsequent withdrawal of the question could only have added weight.)

"(3) The verdict is against the manifest weight of the evidence and is contrary to law."

I

Assignment of Error No. 2 lacks consequence because, giving full weight to claimed error No. 2 the ultimate result in the case would have been no different and the error, if any, was not of the variety *per se* to require reversal.

Claimed Error No. 3 fares no better. The validity of that claim turns upon credibility determinations within the province of the jury. The evidence was such that reasonable minds could reach different conclusions as to whether each material element of the crime had been proven beyond a reasonable doubt, *State* v. *Swiger* (1966), 5 Ohio St. 2d 151, 156. This depends, however, upon whether the jury *believed* the State's witnesses. The crucial portent of credibility brings us to Assignment of Error No. 1.

## II

The substance of Assignment of Error No. 1 lies in the claim that "the defendant was unnecessarily prejudiced by the impermissible restriction . . . remarks by the Court placed on defense efforts to impeach these witnesses' credibility."

The principal, indeed the essential, State witness was an informant of dubious credentials. His credibility was the crux of the matter at issue. His motivation was so vital to his reliability that evidence impeaching him could be determinative of the ultimate issues in the case. Thus, credibility considerations made this case a close one and took errors affecting credibility out of the realm of harmless error.[1]

The objectionable actions came gratuitously from the bench in the presence of the jury. During the cross-examination of police officers considerable pall had been cast on the informant's reasons for testifying as he did. As part of the cross-examination, among other things, one police officer was asked whether the informant had been told that his cooperation would be brought to the attention of the Court considering sentencing of the informant for his own miscreance. After an affirmative answer by the police officer the Court interjected:

". . . So that the jury will understand, that won't be

---

[1]See *Hoare* v. *Cleveland* (1933), 126 Ohio St. 625, 628. "If this were a closer controversy, the reception in evidence of such objectionable material would compel us to reverse the case upon that one ground." Cf. Traynor, *The Riddle of Harmless Error*, pp. 71, 72, The Ohio State University Press, 1970.

necessary, because it is coming before me, and I know whether he has cooperated, . . . ." (Record at 130.)

At a point in the cross-examination of another police officer, the testimony was elicited that the informant was hoping for a good bargain in sentencing because of his performance as a witness in the case on trial. The bench volunteered this question to defense counsel:

"Don't you think you know me well enough to know that they can't make bargains with me, Mr. Willis?" (Record at 184.)

The integrity of the trial judge is beyond question. But that is not the point. The point is what effect the law officers' conversations with the informant had upon the informer's reliability. It was the informant's integrity that was in issue. And the consequence of the Court's remarks was to lend the prestige and reliability of the Court to bolster the dubious honesty of the witness. The effect was to place the weight, authority and unquestionable integrity of the trial judge behind a rebuttal of the impeachment.

Under these circumstances we cannot say that the outcome of the case was not influenced to the detriment of the defendant's right to a fair trial.

The judgment is reversed and the cause remanded for further proceedings according to law.

*Judgment reversed.*

KRENZLER, J., concurs.

SILBERT, J., dissenting. I would affirm the judgment. A careful reading of the record discloses more than ample evidence to support the verdict of the jury. I fail to see where the statement by the trial judge influenced the jury in its verdict. If there was any error in the court's remarks, it was harmless error and not prejudicial.