THE STATE OF OHIO, APPELLEE, *v.* KISH, APPELLANT.

(No. 81-J-11—Decided December 15, 1981.)

*Mr. Stephen M. Stern,* prosecuting attorney, for appellee.

*Ms. Judith A. Powell* and *Ms. Susan C. Powell,* for appellant.

LYNCH, P.J. Defendant-appellant, Michael J. Kish, is appealing his conviction by a jury and his sentence by the court of common pleas for being guilty of grand theft in violation of R.C. 2913.02.

On the evening of November 30, 1980, someone broke into Wolk's Kamera Shop in downtown Steubenville and Wolk's security company notified the Steubenville Police Department. Officers Coleman and Bates proceeded to the alley behind Wolk's Kamera Shop where they found defendant alongside a parked truck.

Officer Coleman testified that as he approached defendant on foot he observed that defendant had a red sweater in his hand which defendant quickly laid on the ground beside the truck; that defendant was searched and handcuffed, and that upon checking the red sweater he found in it a number of cameras and other items which were subsequently identified as part of the merchandise taken from Wolk's Kamera Shop.

Defendant testified that on subject evening he was drinking peppermint schnapps and beer at various places; that he met an acquaintance named Frank Pappola whom he drove to Pappola's home; that he ended up in downtown Steubenville at the Moose Lodge, which he left after 11:00 p.m.; that he walked to the Fort Steuben Hotel parking lot where he had parked his car but could not find it; that he was drunk and was "getting sick at his stomach"; that as he was looking for his car in subject alley, he saw subject police car and crouched down between a pickup truck and a dump truck where the police found him; that he admitted that state's exhibit No. 1, which had been previously identified as the sweater in which subject cameras were found, was his sweat shirt which he had left in his car; and that he denied that he entered Wolk's Kamera Shop and took subject cameras and equipment.

On rebuttal, Frank Pappola testified for the state that on the evening of November 30, 1980, defendant picked him up at his house; that they went drinking together at the Holiday Lanes; that they left around 11:00 p.m. and parked defendant's car at the Fort Steuben Hotel parking lot; that they both walked to the rear of Wolk's Kamera Shop into which they entered by kicking in the doors; that they both grabbed some cameras and left; that Pappola laid his camera down by a pickup truck; that defendant gave him the keys to his car; that as Pappola went to get defendant's car, the police came and that Pappola drove away from the scene of the crime.

At the end of the direct examination

of Pappola, the following incident occurred in the presence of the jury:

"THE COURT: Are you under an indictment?

"A. No.

"THE COURT: Have you been charged with a crime?

"A. No sir.

"THE COURT: Do the police know what you did?

"A. Yes sir.

"THE COURT: Who did you tell it to?

"A. Sergeant Spence.

"THE COURT: And nothing was done about it?

"A. No sir.

"THE COURT: I want him arrested.

"MR. STERN: Your Honor, may I approach the bench?

"THE COURT: No you may not. I don't think you can approach the bench on this. This is a commission—he has alleged that he committed a violation of the law, and he is under my suggestion, at this time. He will be arrested. Sheriff, as soon as he gets through with this examination, I want you to take him to jail, and I want him under indictment."

At the end of Pappola's testimony the following incident occurred in the presence of the jury:

"THE COURT: Sheriff, take him to jail.

"MR. PAPPOLA: Excuse me, your Honor.

"THE COURT: There is no excuse, the sheriff will take you to jail.

"MR. PAPPOLA: I was going to ask you about my bond.

"THE COURT: There's no bond that I know of. There is going to be charges filed against you on your own statement."

In his closing argument to the jury, the prosecuting attorney stated, in pertinent part, as follows:

"I apologize for what happened in this Courtroom. I apologize that I had to bring in Frank Pappola to this Courtroom. He wasn't called on direct examination on the State's case in Chief. I apologize that I had to bring him in here for you, because I don't think he's a good witness, and I don't respect him. * * * I don't respect Frank Pappola, but he came in to tell what he knows.

"I brought in every witness I know that had information about this case.

"* * * Let's forget about Frank Pappola for a while, because we have all the other testimony."

The trial court, in his charge to the jury, stated, in pertinent part, as follows:

"If during the course of this trial, the Court said or did anything that you, the Jury, would consider an indication of this Court's view on the decision that you must render in this case, you are instructed to disregard it."

Defendant's first assignment of error is that he was deprived of due process of law and denied a fair trial because the trial judge arrested the prosecution's chief witness in the presence of the jury giving credibility to the witness' testimony.

The jury is the sole judge of the weight of the evidence and the credibility of witnesses. *State* v. *DeHass* (1967), 10 Ohio St. 2d 230 [39 O.O.2d 366], paragraph one of the syllabus; *State* v. *Swiger* (1966), 5 Ohio St. 2d 151, 156 [34 O.O.2d 270]; *State* v. *Antill* (1964), 176 Ohio St. 61, 67 [26 O.O.2d 366]; 27 Ohio Jurisprudence 3d 205, Criminal Law, Section 971; 56 Ohio Jurisprudence 2d 853-854, Witnesses, Section 416.

The third paragraph of the syllabus of *State, ex rel. Wise,* v. *Chand* (1970), 21 Ohio St. 2d 113 [50 O.O.2d 322], is as follows:

"In a trial before a jury, the court's participation by questioning or comment must be scrupulously limited, lest the court, consciously or unconsciously, indicate to the jury its opinion on the evidence or on the credibility of a witness."

The second paragraph of the syllabus of *State* v. *Kay* (1967), 12 Ohio App. 2d 38 [41 O.O.2d 91], is as follows:

"Where questions asked and statements made by a trial judge in the progress of a criminal trial within the hearing of the jury may be construed as an opinion on the part of the judge concerning the credibility of a defendant or of a witness, or as his opinion as to the facts of the case, prejudicial error results."

The general rule is that the court's commitment of a witness for perjury during the trial and in the presence of the jury constitutes reversible error, as an encroachment upon the right of the jury freely to consider a witness' testimony uninfluenced by the court's unauthorized direction or opinion as to the credibility of the witness or the weight of the testimony. *United States* v. *Bates* (C.A. 5, 1972), 468 F. 2d 1252; *State* v. *Simpson* (1951), 233 N.C. 438, 64 S.E. 2d 568; 75 American Jurisprudence 2d 163, Trial, Section 50; Annotation, 127 A.L.R. 1385, 1394.

In *State* v. *McNeil* (1950), 231 N.C. 666, 58 S.E.2d 366, the court applied the above rule to a case where a witness was arrested in the presence of the jury without assigning any reason therefor.

See *Hazen* v. *Morrison & Snodgrass Co.* (1911), 14 O.C.C. (N.S.) 483, 486.

We hold that subject conduct of the trial court was a serious error because it violated defendant's right to a fair trial as provided by the Due Process Clause of the Fourteenth Amendment to the United States Constitution and that such error had to prejudice defendant to some extent.

We are impressed with the efforts of the prosecuting attorney to attempt to repair the damage to his case caused by subject misconduct of the trial court by apologizing for presenting Pappola as a witness and by directing the attention of the jury to other evidence in this case. In our opinion the probabilities are that if the trial court had not ordered the arrest of Pappola in the presence of the jury, the jury verdict would be the same and that a new trial will not change the result of this case. However, we cannot say that the defendant was not prevented from having a fair trial by subject misconduct. See R.C. 2945.83(E) and *State* v. *Thomas* (1973), 36 Ohio St. 2d 68 [62 O.O.2d 4].

Therefore, we sustain defendant's first assignment of error.

Defendant's second assignment of error is that the evidence presented at trial is insufficient to prove a charge of grand theft.

Upon a reading of the entire record of this case we hold that there was sufficient evidence to support the verdict of the jury as to his guilt of the crime of grand theft. Therefore, we overrule defendant's second assignment of error.

The judgment is reversed, and the cause is remanded for a new trial.

*Judgment reversed and cause remanded.*

O'NEILL and DONOFRIO, JJ., concur.