JOURNAL ENTRY AND OPINION
A jury found defendant Samira Abdelhaq guilty of a single count of assault, a lesser included offense of the originally charged count of felonious assault. The assigned errors raise questions about the arrest of defendant's witnesses midway through trial, admission of certain evidence, the competency of trial counsel, and sentencing.
The evidence, taken in a light most favorable to the state,State v. Coleman (1999), 85 Ohio St.3d 129, 139, shows that defendant and the victim were friends before the assault and both attended the same college. At some point prior to the assault, defendant and her sister approached the victim at a common area inside a college building. Defendant told the victim that she wanted the money that the victim owed her. The victim denied owing defendant any money and the three began arguing so loudly that a professor broke up the argument.
Not long after the argument at the college, the victim had been backing out of her driveway to drive her four-year-old niece to her mother's house when she saw defendant, defendant's sister, and two girl friends approach the car and try to open the driver's door. The victim put the car in gear and moved closer to the house, but defendant and her friends followed the car. The victim stopped the car and exited the vehicle. Defendant and her friends attacked the victim by scratching, punching, kicking and spitting on her. The victim heard them yell, "[g]et that bitch. Get her in the face. Get that bitch's face." One of the four took a brick and threw it on the victim's back.
The victim's father happened to be down the street and heard the commotion. He told his son to help the victim, but the son, too, found himself in the fight. One of the attackers threw a brick at him, but missed and hit a nearby house. When the attackers finally broke off, they told the victim "to watch my back at school, um, they were swearing, you fucking bitch watch — you'd better watch your back. Us Arabs, we stick together. Don't you know that?" They also uttered racial slurs and blew her a kiss, saying "how do you like your face now?"
The victim sought medical treatment for cuts, scratches and bruises. After the attack, the victim and defendant did not see each other, but defendant called the victim and threatened to douse her with lighter fluid and set her on fire. At one point, defendant saw the victim at school and told her companions that the victim was "a bitch and a whore." The victim filed a report with college officials and asked for security escorts to and from classes.
 I
The first assignment of error is that counsel performed ineffectively by having an inadequate closing argument, by failing to control "the Court environment," and by mishandling defendant's witnesses.
To establish a claim of ineffective assistance of counsel, defendant must first demonstrate that trial counsel's performance fell below the objective standard of reasonable competence under the circumstances. Second, she must show that, as a result of this deficiency, she was prejudiced at trial. Strickland v.Washington (1984), 466 U.S. 668, 687; State v. Mills (1992),62 Ohio St.3d 357, 370.
App.R. 12 (A) (2) and 16 both state that the court of appeals may disregard an assignment of error presented for review if the appellant fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately. Defendant's argument under this assignment (as distinct from her statement of the law) follows in its entirety:
 1. Inadequate closing arguments. While closing arguments of either Prosecutor or Appellant's own counsel are not considered evidence, that the jury may consider subjectively what was said in coming to a verdict, and the closing arguments in the instant case were pivotal due to the fact that the State's case was built on such flimsy evidence — i.e. the self-serving, vague, and inflammatory testimony of the alleged victim coupled with a total lack of any concrete evidence.
 2. Lack of control of the Court environment.
Throughout the trial, from the voir dire to the sentencing, the prosecutor and the "victim" ran wild making any kind of inflammatory, accusatory statements that either chose, generally unchallenged by the Appellant's counsel. Even when the Appellant's counsel raised an objection, more inflammatory accusations ere [sic] made, and the situation was actually worsened rather than improved.
 3. Mishandling of the Appellant's witnesses.
Appellant's only two witnesses, Jasmine Abdelhaq and Enas Banas, did not actually testify due to their arrest immediately prior to the their testifying, a fact which became known to the jury and may have subjectively prejudiced the jury in coming to a verdict. The situation concerning these two witnesses could have been handled differently by Appellant's counsel.
The first two grounds of alleged ineffective assistance of counsel fail to point out in the record any concrete instances of ineffective performance. The first ground, relating to closing argument, makes absolutely no mention of why defense counsel gave an "inadequate" summation. The second ground, relating to the lack of control of the court environment, likewise fails to identify any inflammatory statements and, moreover, appears to concede that objections would have been futile since the ones that were made "actually worsened rather than improved" the situation.
"Assignments of error should designate specific rulings which the appellant wishes to challenge on appeal." Taylor v. FranklinBlvd. Nursing Home, Inc. (1996) 112 Ohio App.3d 27, 32, citing N.Coast Cookies v. Sweet Temptations, Inc. (1984), 16 Ohio App.3d 342,343-344 and Phillips v. Garfield Hts. (1992), 85 Ohio App.3d 413,421. In our discretion, we may chose to disregard an unbriefed error. Hawley v. Ritley (1988), 35 Ohio St.3d 157, 159. Since neither the first nor second ground makes any colorable argument relating to counsel's ineffectiveness, we disregard these assignments.
The third ground listed as ineffective assistance of counsel is equally nebulous in that it makes the vague argument that counsel could have handled the situation differently. We likewise refuse to address this point, but note it is addressed in full in the second assignment of error. Accordingly, the first assignment of error is overruled.
 II
The second assignment of error complains that the court denied defendant her Sixth Amendment right to present witnesses in her own defense by permitting the arrest of defendant's sister and her friend just before the conclusion of the state's case. Both the sister and friend had apparently agreed to be defense witnesses, but following their arrest, they invoked their Fifth Amendment rights against self-incrimination and refused to testify for defendant. Defendant complains the detective who made the arrests told the jury that the arrests had been made, and defendant claims this compromised her case since she told the jury she would be presenting the testimony of these witnesses.
At the time of trial, neither the sister nor the friend had been charged in connection with the offense, although the state represented that they were "suspects." Before trial and continuing during trial the state told the court that the sister and friend had been intimidating the victim and her family. The assistant prosecuting attorney told the court:
 * * * while I was interviewing a witness on the stand, he [the police detective who arrested the sister and friend] was approached by your court reporter who advised him that there was a problem going on outside. He left. I didn't know why. When he went out there, he was advised by three witnesses that are out there, which are specifically Jadranka Peldich, the victim in this case, her sister Mariana I think her name is, and the father that they were being harassed by the two suspects. The two suspects were telling them words to the effect of we're just witnesses. We're just witnesses. Samira's gonna' get off because we're gonna' go testify. They're not gonna' get her because we're gonna' be her witnesses. She's getting off, upsetting all of them.
Later, the state recounted a discussion held in chambers and said:
 I said that the detective told me when I asked him why he did arrest them, he told me that initially Jadranka Peldich, the victim, was more interested in this defendant and he also told me that he did not have the proper names or spelling and the correct addresses for the two suspects. Now, whether they disagree with that, that's what the detective told me * * *.
 Because of their behavior during these months that it's been pending, calling the victim, harassing the victim, threatening the victim, directly because of their behavior since they have been here, taunting the victim and saying that they were just witnesses and that the law couldn't get to them, the detective told me that they were here and rather than sending it through the grand jury, which he initially planned to do, he decided to arrest them. That's totally within his discretion to do and there was nothing improper about that at all.
Defense counsel strenuously objected, noting that the detective did not arrest either the sister or the friend on intimidation charges, but for felonious assault. Counsel further argued that had the detective wished to find proper spelling of names and correct addresses, he could easily have done so in the seven months between the offense and his decision to arrest. Counsel argued that the timing of the arrests seemed particularly geared to force the witnesses to invoke their rights against self-incrimination and keep them off the witness stand. They maintained this prejudiced defendant since they represented in opening argument that they would present "different versions, " presumably meaning that the sister and friend would be testifying.
The court denied a motion for a mistrial at this point, concluding that the arrest did not put either witness in a position different from that which they would have been in had no arrest been made. The court noted that it would have advised both witnesses to obtain legal counsel before testifying, and given their alleged complicity in the assault, legal counsel would most probably have advised the witnesses not to testify; therefore, counsel would ultimately have been appointed and almost certainly would have advised the witnesses not to testify.
"Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law."Washington v. Texas (1967), 388 U.S. 14, 19. "[T]he Sixth Amendment does not by its terms grant to a criminal defendant the right to secure the attendance and testimony of any and all witnesses: it guarantees him compulsory process for obtaining witnesses in his favor." See United States v. Valenzuela-Bernal
(1982), 458 U.S. 858, 867 (emphasis sic). This right is subject to countervailing public interests, "such as the state's responsibility for arresting and prosecuting suspected criminals." Buie v. Sullivan (C.A.2, 1990), 923 F.2d 10, 12. When an accused seeks to establish a violation of the right to present a defense, the accused must show (1) the evidence was material and exculpatory, (2) there was bad faith on the part of the state, and (3) the lack of fundamental fairness. Id. at 11-12. The overriding consideration is that there must be some "plausible showing of how [the witness'] testimony would have been both material and favorable to [the] defense."Valenzuela-Bernal, 458 U.S. at 867; United States v. Iribe-Perez
(C.A.10. 1997), 129 F.3d 1167.
There has been no indication of just how material and exculpatory the witnesses' testimony would have been. Since defendant appeared to claim that the victim started the fight, we can reasonably presume that the witnesses would have given testimony showing that they and defendant were the victims. We admit to some skepticism that either witness would have exculpated defendant, since it strikes us as highly unlikely that one person would attack three, particularly when defendant's supposed version of the facts would have the victim leaving her four-year-old niece in the car while she brawled in the street. of course, this is mere speculation on our part, and we are forced to speculate because we have no other indication of what these witnesses might have said on the witness stand.
State v. Kish (1981), 4 Ohio App.3d 252, is not to the contrary. Kish had been charged with grand theft of camera equipment. On rebuttal, the state presented the testimony of Kish's accomplice, who in the course of testifying not only named Kish as a perpetrator, but himself as well. The judge questioned the accomplice on the witness stand, in front of the jury, as to whether the police knew about the accomplice's involvement in the grand theft. The accomplice replied that the police did know, but had not arrested him. The judge ordered the accomplice arrested as soon as he finished his testimony. The court of appeals held that the accomplice's arrest in front of the jury, constituted an encroachment upon "the right of the jury freely to consider a witness' testimony uninfluenced by the court's unauthorized direction or opinion as to the credibility of the witness or the weight of the testimony." 4 Ohio App.3d at 254 (citations omitted). The key distinction between this case and Kish as that neither witness in this case had actually testified (nor for that matter been identified), so they had no credibility to be ruined by an arrest.
We likewise fail to see any clear indication of bad faith on the part of the state. The prosecuting attorney repeatedly told the court that she did not, and could not, order the detective to make the arrests when he did. In fact, the prosecuting attorney appeared genuinely surprised by the turn of events, even if she did ultimately support the arrests.
We admit to some concern over the timing of the arrests. Certainly, the detective had seven months in which to obtain the proper names and addresses of the witnesses, so his excuse for waiting so long to make the arrests seems contrived — it does not appear that any great leg work would have been involved. The record also suggests the detective's motivation to arrest the witnesses appeared to be as a result of their alleged intimidation of the victim and her family, yet the witnesses were not charged with intimidation. If, as the witnesses allegedly said, they would provide exculpatory testimony in defendant's favor, the officer's subjective motivation for arresting the witnesses must certainly be called into question.
Nevertheless, without conceding bad faith on the part of the detective, the law requires an examination into the state's bad faith, not the arresting officer's bad faith. We are aware that in pretrial discovery matters it is said that "the police are a part of the state and its prosecutional machinery." State v.Wiles (1991), 59 Ohio St.3d 71, 78, quoting State v. Tomblin
(1981), 3 Ohio App.3d 17, 18. However, because an officer has the duty to arrest and detain without a warrant any person violating the law, see R.C. 2935.03(A), the state sometimes has no prior input into the decision to arrest, so under these circumstances the arresting officer's conduct cannot reasonably be imputed to the state. In this case, the prosecuting attorney disavowed any prior knowledge of the detective's decision to arrest the witnesses, and nothing in the record contradicts this assertion.
Finally, we do not see any lack of fundamental fairness. The test of "fundamental fairness" is used to determine if a particular action violates the Due Process Clause. Under this test, we must determine whether "the action complained of violates those "fundamental conceptions of justice which lie at the base of our civil and political institutions, `and which define `the community's sense of fair play and decency.'" Dowlingv. United States (1990), 493 U.S. 342, 352 (internal citations omitted). The Supreme Court has "defined the category of [such trial court] infractions that violate `fundamental fairness' very narrowly." Dowling v. United States (1990), 493 U.S. 342, 352. The definition of fundamental fairness is intentionally nebulous, but has been described as conduct "so outrageous and shocking that it exceed[s] the bounds of fundamental fairness." UnitedStates v. Johnson (C.A.8, 1985), 767 F.2d 1259, 1275.
The court noted that as a matter of course it would have advised both witnesses to obtain independent legal counsel before taking the witness stand in defendant's defense. As suspects in the assault, their testimony may have placed them in jeopardy of being charged with assault. It is within the discretion of the court to warn a witness about the possibility of incriminating herself, United States v. Silverstein (C.A. 1984), 732 F.2d 1338,1344, just so long as the court does not abuse that discretion by so actively encouraging a witness' silence that advice becomes intimidation. See United States v. Arthur (C.A.6, 1991),949 F.2d 211, 216. It thus appears highly likely that both witnesses would have been advised of their right against self-incrimination even if they had not been arrested. That they might have invoked the Fifth Amendment anyway leads us to believe that fundamental fairness was not violated.
We also find no merit to the proposition that defendant's defense was compromised by her failure to present witnesses to the jury as promised. Defendant overstates her opening remarks to the jury as a promise that the two witnesses would testify. At no point did she specifically promise to present witnesses, nor did she identify those witnesses to the point where a jury would note their obvious absence. Defense counsel stated, "[y]ou are likely going to hear versions from the defense, from other people who were there." The word "likely" implies probability, not certainty. So without a concrete promise to present witnesses, nor a concrete statement of who those witnesses would be, it cannot be reasonably maintained that the jury would have noticed any omissions by the defense and, more importantly, that the jury would have held those omissions against defendant in a prejudicial manner.
For the foregoing reasons we find the court did not violate defendant's right to present a defense. The second assignment of error is overruled.
 III
The third assignment of error raises nine things defense counsel could have done by way of discovery to bolster the defense. Most of the court grounds merit no discussion because they are either pointless (for example, presenting the testimony of the victim's sister, whose four-year-old daughter had been in the car at the time of the assault); irrelevant (for example, presenting the testimony of the professor who broke up defendant's and the victim's verbal altercation at college); or cumulative (for example, presenting a witness from the duty office of the police station where the victim filed her police report).
One of the grounds, though, merits some discussion. Defendant claims the brother of the alleged victim could have contributed to her defense. This argument mystifies us, for the victim and her father both testified that the brother had also been attacked by the three women when he came to his sister's aid. If anyone should have called the brother as a witness, it would have been the state, not defendant. We see no violation of any essential duty; hence, we find no showing of ineffective assistance of counsel. The third assignment of error is overruled.
 IV
The fourth assignment of error complains that defendant was denied her right to confrontation of witnesses with the admission of hearsay statements made by the victim. The precise argument is set forth on page 15 of Appellant's Brief:
 In the instant case, numerous accusations were introduced into the evidence via the testimony of the alleged victim, Jadranka Peldich. The person who allegedly made the statement was available to testify. No attempt was made to bring this person to court to testify. All of the actual declarants were available to testify in court. instead [sic] the court allowed numerous hearsay and unverified statements to be introduced into evidence, Defendant's attorney failed to either object or to subpoena such declarants as hostile witnesses for Defendant. (See pages ___ of the transcript.)
The quoted portion of defendant's brief shows that defendant has not pointed to what the offending statements are, who made the offending statements, and where in the record those statements might be found. In conformity with App.R. 12 (A) (2) and 16, we disregard this argument.[1]
 IV
In her fourth assignment of error, defendant complains that the state engaged in misconduct by making improper and prejudicial statements that tended to impugn her character and brought before the jury other acts evidence.
The test for prosecutorial misconduct is whether the prosecutor's conduct was improper and prejudicially affected the substantial rights of the defendant. State v. Lott (1990),51 Ohio St.3d 160, 165. Generally speaking, the trial conduct of a prosecuting attorney cannot be made a ground of error unless that conduct deprives the defendant of a fair trial. State v. Maurer
(1984), 15 Ohio St.3d 239.
Defendant's first substantive point, that the state told the jurors that she was a "foul-mouthed" person, is wholly without merit. During voir dire, the state told the prospective jurors that they may hear testimony involving the use of four-letter words. At no point did the state say that the evidence would show that defendant used such language; in fact, the state did not mention defendant's name. Defendant did not object at any time during this portion of voir dire, so the issue has been waived on appeal. Moreover, it may be entirely appropriate for the court, when faced with evidence that contains offensive language, to confront the panel with the offensive language during voir dire
in order to minimize any prejudice to the jury or counsel (who might speak tentatively out of a reluctance to offend). UnitedStates v. Frasch (C.A.7. 1987). 818 F.2d 631, 634; United Statesv. Bright (C.A.5, 1980), 630 F.2d 804, 814.
Defendant next claims the state either asked or implied to the jury that a court reporter overheard defendant making confessions or incriminating statements concerning her guilt to her sister in the court hallway just before the start of trial. This argument has no merit whatsoever. The transcript shows the state brought this matter to the attention of the court before trial, and out of the hearing of the jury. The court reserved any ruling on the admissibility of the court reporter's claim and ultimately prohibited the state from putting the court reporter on the witness stand.
Finally, defendant claims the state improperly referred to "other acts" evidence in the form of testimony to show she, her friends and relatives continued to harass the victim after the assault with telephone calls and verbal attacks.
Evidence of witness intimidation is admissible to prove consciousness of guilt and criminal intent under Rule 404 (b), if the evidence (1) is related to the offense charged and (2) is reliable. See United States v. Rowley (C.A.4, 1998), 155 F.3d 563, 563.
The victim testified that after the assault defendant called her several times, once threatening to set her on fire. In response to these threats, the victim filed another complaint with the police. In another incident, defendant confronted the victim at her college and screamed at her telling those within earshot that the victim was a bitch and a whore. The victim said that the name calling continued during trial, outside the courtroom in the hallway, although it was "nothing drastic, just name calling basically."
We find this testimony probative since the name calling and intimidation are related to the assault and was reliable under the circumstances. The fourth assignment of error is overruled.
 V
The fifth assignment of error complains that the state engaged in prosecutorial misconduct by making racially prejudiced remarks during voir dire and at sentencing.
Defendant's argument lacks merit. During voir dire, the state warned prospective jurors that most of the testimony would come from persons who spoke accented English, so they would be required to listen carefully. The state clearly mentioned that the witnesses would be either Arab or Croat. There is nothing in this comment that could reasonably be construed as suggesting an ethnic bias against defendant.
Defendant also claims that during sentencing the state suggested to the court that recidivism ran in her family since her brother had been incarcerated for murder. This does not constitute a trial error since a verdict had been rendered and the jury discharged before the state made this statement. We will consider this argument in conjunction with the assignment of error relating to sentencing. The fifth assignment of error is overruled.
 VI
The sixth assignment of error claims that evidence was insufficient to support a guilty verdict on assault, and that the jury's verdict was against the manifest weight of the evidence.
 A
R.C. 2903.13(A) states that "no person shall knowingly cause or attempt to cause physical harm to another * * *" "Physical harm" is defined in R.C. 2901.01(A) (4) as any injury regardless of its gravity or duration. The state presented the testimony of the victim that established the defendant participated in a brawl that left the victim suffering from cuts and bruises. The injuries depicted in the photographs were more than sufficient to establish the elements of assault. In reaching this conclusion, we note that defendant's extended argument about the existence of a brick and whether defendant threw the brick at the victim is pointless in light of the scratches and bruises shown in the photographs.
 B
As for the weight of evidence, we must defer to the trier of fact's superior position to evaluate the witnesses and evidence.State v. Hill (1996), 75 Ohio St.3d 195. Certainly, the state's evidence established that defendant had an apparent motive to attack the victim and the evidence showed that defendant's animosity continued even after the attack up to the time of trial. These points, coupled with the photographic evidence showing the results of the beating, amply support the jury's verdict. The sixth assignment of error is overruled.
 VII
The seventh assignment of error complains that the court abused its discretion by imposing an excessive sentence. The record shows the court imposed a six-month term of incarceration for this first degree misdemeanor, but suspended five months of that sentence.
Misdemeanor sentencing is committed to the discretion of the trial court, but the exercise of such discretion must be guided by consideration of the nature and circumstances of the offense; the offender's risk of recidivism; the need to protect the public from future crimes by the offender; the "history, character, and condition" of the offender; the offender's need for rehabilitation; a victim impact statement, where applicable; and the ability of the offender to pay a court-imposed fine. R.C.2929.22(A) and (B). The fact that a defendant is not a repeat or dangerous offender mitigates against imposition of a prison term, but does not control the discretion of the trial court. R.C.2929.22(B) (1). Similarly, the trial court's discretion is guided, but not controlled, by the seriousness and recidivism factors enumerated in R.C. 2929.12(C) and (E). R.C. 2929.22(C). The trial court may properly consider any additional relevant factors. See R.C. 2929.22(D). A misdemeanor sentence that falls within the guidelines established by R.C. 2929.22 will be disturbed on appeal only in the case of an abuse of the trial court's discretion. State v. Keaton (1996), 113 Ohio App.3d 696,707-708.
We find the court did not abuse its discretion by suspending five months of defendant's sentence and requiring her to serve one month in jail. During sentencing, the court heard the victim speak about the effect the assault had on her life. This included requiring escorts to and from her college classes for fear of being confronted by defendant or her associates. The court also considered that defendant sent him a letter in which she bemoaned her "unpleasant contact" with the court system, complaining that she did not have a fair trial and insisting at sentencing that she herself was the victim of the fight. The court thought this reflected poorly on defendant's prospects for rehabilitation.
It is true that the state mentioned that defendant's brother was incarcerated on a murder charge, but we fail to see how this would have affected the court's sentencing. The court suspended all but one month of the sentence, and its decision to impose one month of jail time appeared related to defendant's refusal to accept responsibility and her intimidation of the victim following the offense. On these facts, we find no abuse of discretion in sentencing. The seventh assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, P.J., KENNETH A. ROCCO, J. CONCUR.
 ___________________________________ JUDGE JOHN T. PATTON
[1] It appears defendant might be referring to statements by the victim's brother and a police officer at the victim's college. The victim said that the professor broke up the argument by telling them "this is a place of learning." We fail to see how this statement constituted hearsay. As for the brother, the victim testified that after he pulled the assailants off her, he told her to call the police. We see nothing offending in this statement.