JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Adrian Spraggins ("Spraggins") appeals his conviction for intimidation of a witness. Finding no merit to the appeal, we affirm.
 {¶ 2} In August 2002, Spraggins was charged in a five-count indictment with one count of intimidation of a witness, two counts of kidnapping, one count of aggravated burglary, and one count of domestic violence. The case proceeded to a jury trial in October 2002, where the following evidence was presented:
 {¶ 3} Meredith Bell ("Bell"), the victim in the instant case, was subpoenaed to appear in the Berea Municipal Court on July 8, 2002 to testify against Spraggins in a domestic violence case. Because she was also the victim in the Berea case, there was a temporary protection order prohibiting Spraggins from contacting her by any means and from being within 100 feet of her.
 {¶ 4} On July 8, 2002, the police responded to a disturbance in the parking lot of MBNA, Bell's place of business in Beachwood. When the police arrived, they observed Bell and Spraggins arguing. Patrolman Michael Finucan testified that Spraggins smelled of alcohol and Bell appeared frightened of Spraggins.
 {¶ 5} Patrolman John Atterbury ("Atterbury") testified that he questioned Bell while Patrolman Finucan questioned Spraggins. Bell told Atterbury that Spraggins came to her house at approximately 7:00 a.m. that morning just as she was preparing to drop off her son with a babysitter on her way to work. He told her that she was not going to testify against him in the domestic violence matter scheduled that afternoon.
 {¶ 6} To prevent Bell's court appearance, Spraggins told her he would drive her to work. Bell ran out of the house with the keys and attempted to call the police on her cell phone. Spraggins chased her into the street and pushed her down. He grabbed a rock and threatened to throw it at her and "beat [her] ass" if she did not get into the car. Bell did not want Spraggins driving because she thought he had been drinking and she did not want her son in the car with him. However, she told police that she and her son got into the car because she was scared.
 {¶ 7} Spraggins drove Bell to work in her car and parked in the MBNA parking lot. Bell grabbed the keys from the ignition and got out of the car. Spraggins chased her and attempted to grab the keys, while threatening to strike her. Witnesses called security and the Beachwood police.
 {¶ 8} Bell later recounted these events in a signed statement she made to Beachwood police. Bell testified at trial that she freely made and signed the statement. However, she also testified that her statement was false. She claimed that she lied to the police because she was angry with Spraggins for leaving her at work without a car and telling her he might not be available to pick her up.
 {¶ 9} Bell further testified that she had been romantically involved with Spraggins for six years and she loved him. She stated that they fought frequently and that sometimes she was afraid of him. Bell further stated that, although Spraggins is not the biological father of her son, he helps provide financial support and that she did not want Spraggins to get into any trouble.
 {¶ 10} The Brook Park police had arrested Spraggins on two prior occasions for assaulting Bell. Officer David Packard testified that on May 13, 2002, Bell voluntarily came to the Brook Park Police Department and filed a domestic violence complaint against Spraggins. The allegations in that complaint stemmed from an altercation with Spraggins the previous day. Bell told Officer Packard that she sustained bruises after Spraggins punched her several times and threw a beer bottle at her head. She also told Officer Packard that Spraggins removed the batteries from her cell phone to prevent her from calling the police. Finally, Bell told the officer that she had another domestic violence case pending with Spraggins, but Spraggins had threatened her not to testify against him.
 {¶ 11} Approximately one month before the trial in the instant case, Bell wrote a letter requesting that the charges against Spraggins be dismissed. In the letter, she stated that she never had any intention of testifying against Spraggins, that he did not intimidate her, and that she never wanted him to be prosecuted. The letter was admitted as evidence at trial.
 {¶ 12} At the conclusion of the trial, the jury found Spraggins guilty of intimidation of a witness but acquitted him on the remaining four counts. The court sentenced him to a four-year prison term.
 {¶ 13} Spraggins appeals, raising three assignments of error.
 Court's Statements Regarding Credibility of Witness {¶ 14} In his first assignment of error, Spraggins argues the trial court violated his constitutional right to due process when it expressed its opinion regarding Bell's credibility as a witness. During the cross-examination of Bell, the trial court made the following comments in the presence of the jury:
"THE COURT: So let me see if I've got this all straight. We're heretrying this case because you are a liar. Is that correct? Do you want toanswer the question yes or no? We are here going though this, trying thiscase because you are a liar, is that correct?
 THE WITNESS: I was upset.
 THE COURT: Answer the question. We are here —
 THE WITNESS: I lied about some [of] these things."
 {¶ 15} It is well established that a trial judge must at all times be impartial and refrain from comments which might influence the jury.State v. Boyd (1989), 63 Ohio App.3d 790, 794, citing, State, ex rel.Wise v. Chand (1970), 21 Ohio St.2d 113; State v. Kish (1981),4 Ohio App.3d 252. In State v. Kay (1967), 12 Ohio App.2d 38, 49, this court stated:
"Statements made by a trial judge during the progress of a trial andwithin hearing of the jury are of the same effect as though embodied inthe charge to the jury, and, where such remarks or questioning may lendthemselves to being interpreted as an opinion on the part of the judge asto the credibility of witnesses or of a defendant or an opinion on hispart as to the facts of the case, prejudicial error results."
 {¶ 16} In the instant case, Spraggins' trial counsel failed to object to the judge's comments. Therefore, any error caused by these comments is waived, absent plain error. State v. Williford (1990),49 Ohio St.3d 247, 251. To show plain error, a defendant must demonstrate "that the trial's outcome would clearly have been different but for the alleged errors." State v. Campbell, 69 Ohio St.3d 38, 49, 1994-Ohio-492. Notice of plain error is taken with the utmost caution, under exceptional circumstances, and only to prevent the manifest miscarriage of justice.State v. Landrum (1990), 53 Ohio St.3d 107, 111.
 {¶ 17} The court's statements appear prejudicial when read in isolation. However, after reviewing the entire record, we do not find plain error. Bell was a recanting witness who had previously admitted in the presence of the jury that she lied to the Beachwood police and that she lied in her sworn statement. The court had also previously declared her a hostile witness because of her inconsistent stories. Therefore, the judge's comments regarding the fact that Bell was a recanting witness were cumulative to statements Bell had already made.
 {¶ 18} Accordingly, the first assignment of error is overruled.
 Effective Assistance of Counsel {¶ 19} In his second assignment of error, Spraggins argues he was denied the effective assistance of counsel because his trial counsel failed to object to the comments the trial judge made about Bell's credibility.
 {¶ 20} In a claim of ineffective assistance of counsel, the burden is on the defendant to establish that counsel's performance fell below an objective standard of reasonable representation and prejudiced the defense. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus; State v. Lytle (1976), 48 Ohio St.2d 391, vacated on other grounds (1978), 438 U.S. 910; and Strickland v. Washington (1984),466 U.S. 668. Hence, to determine whether counsel was ineffective, appellant must show that (1) "counsel's performance was deficient," in that "counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment," and (2) counsel's "deficient performance prejudiced the defense," in that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v. Washington
(1984), 466 U.S. 668, 687.
 {¶ 21} In Ohio, a properly licensed attorney is presumed competent, Vaughn v. Maxwell (1965), 2 Ohio St.2d 299, 301. Moreover, there is "`a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *.'" Bradley,
supra, at 142, quoting Strickland, 466 U.S. at 689. Additionally, the effective assistance of counsel does not guarantee results. State v.Longo (1982), 4 Ohio App.3d 136, 139. "A failure to prevail at trial does not grant an appellant license to appeal the professional judgment and tactics of his trial attorney." State v. Hart (1988), 57 Ohio App.3d 4,10. Moreover, reviewing courts must not use hindsight to second-guess trial strategy and must keep in mind that different trial counsel will often defend the same case in a different manner. See, Strickland,466 U.S. at 689.
 {¶ 22} In evaluating whether a petitioner has been denied effective assistance of counsel, the Ohio Supreme Court has held that the test is "whether the accused, under all the circumstances, * * * had a fair trial and substantial justice was done." State v. Hester (1976),45 Ohio St.2d 71, paragraph four of the syllabus. When making that determination, a court must determine "whether there has been a substantial violation of any of defense counsel's essential duties to his client" and "whether the defense was prejudiced by counsel's ineffectiveness." State v. Lytle (1976), 48 Ohio St.2d 391, 396, andState v. Calhoun (1999), 86 Ohio St.3d 279, 289. To show that a defendant has been prejudiced, the defendant must prove "that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Bradley, at paragraph three of the syllabus; and Strickland, supra, at 686.
 {¶ 23} Here, defense counsel's failure to object to the court's comments was not so serious as to have deprived Spraggins of a fair trial. As explained in the previous assignment of error, Bell was a recanting witness who had admitted in the presence of the jury that she lied to the Beachwood police and that she lied in her sworn statement. Because the trial court's comments were cumulative to statements Bell had already made, the court's comments would not have changed the outcome of the trial. Therefore, Spraggins was not denied the effective assistance of counsel.
 {¶ 24} Accordingly, the second assignment of error is overruled.
 Manifest Weight of the Evidence {¶ 25} In his third assignment of error, Spraggins argues the jury's verdict finding him guilty of intimidation of a witness was against the manifest weight of the evidence.
 {¶ 26} The standard of review for a manifest weight challenge is summarized in State v. Martin (1983), 20 Ohio App.3d 172, 175, as follows:
" * * * The court, reviewing the entire record, weighs the evidence andall reasonable inferences, considers the credibility of witnesses anddetermines whether in resolving conflicts in the evidence, the juryclearly lost its way and created such a manifest miscarriage of justicethat the conviction must be reversed and a new trial ordered. Thediscretionary power to grant a new trial should be exercised only in theexceptional case in which the evidence weighs heavily againstconviction." (Citations omitted.)
 {¶ 27} See State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52.
 {¶ 28} The weight of the evidence and credibility of the witnesses
 {¶ 29} are primarily for the trier of fact. State v. DeHass
(1967), 10
 {¶ 30} Ohio St.2d 230, paragraph one of the syllabus. The power to reverse a judgment of conviction as against the manifest weight of the evidence must be exercised with caution and in only the rare case in which the evidence weighs heavily against the conviction. State v.Martin, supra, at 175.
 {¶ 31} In determining whether a judgment of conviction is against the manifest weight of the evidence, this court in State v. Wilson,
Cuyahoga App. Nos. 64442-64443, 1994-Ohio-2508, adopted the guidelines set forth in State v. Mattison (1985), 23 Ohio App.3d 10. These factors, which this court noted are in no way exhaustive, include:
"1) Knowledge that even a reviewing court is not required to accept astrue the incredible;
 2) Whether evidence is uncontradicted;
 3) Whether a witness was impeached;
 4) Attention to what was not proved;
 5) The certainty of the evidence;
 6) The reliability of the evidence;
 7) The extent to which a witness may have a personal interest toadvance or defend by their testimony; and
 8) The extent to which the evidence is vague, uncertain, conflicting,or fragmentary."
 {¶ 32} Wilson, supra, at 18-19.
 {¶ 33} A reviewing court will not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the prosecution proved the offense beyond a reasonable doubt. State v. Eley
(1978), 56 Ohio St.2d 169.
 {¶ 34} Upon review of the evidence presented at the trial, this court cannot find that the trier of fact clearly lost its way when it convicted Spraggins. Spraggins was indicted under R.C. 2921.04(B), which states:
"(B) No person, knowingly and by force or by unlawful threat of harm toany person or property, shall attempt to influence, intimidate, or hinderthe victim of a crime in the filing or prosecution of criminal charges oran attorney or witness involved in a criminal action or proceeding in thedischarge of the duties of the attorney or witness."
 {¶ 35} In the instant case, Bell told police that Spraggins came to her home on July 8, 2002, the day she was to appear in Berea Municipal Court to testify against him in a domestic violence case. Bell also told police that Spraggins took her car that day, over her objection, in an attempt to prevent her court appearance. She also reported that Spraggins threatened her with physical harm if she did not allow him to take her car.
 {¶ 36} Bell later changed her story and testified that she never intended to appear in Berea Municipal Court and that her initial statements to police that Spraggins intimidated her to prevent her court appearance were untruthful. Spraggins relies on this testimony in his request that we vacate his conviction.
 {¶ 37} Although Bell offered conflicting versions of the events of July 8, 2002, such inconsistencies do not necessarily render Spraggins' conviction against the manifest weight of the evidence. State v. Nivens
(May 28, 1996), Franklin App. No. 95APA09-1236. Because the jury has the best opportunity to both see and hear the witness' testimony, evaluating the credibility of witnesses is primarily a function of the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, 231. Indeed, "it is the province of the jury to determine where the truth probably lies from conflicting statements, not only of different witnesses but by the same witness." State v. Lakes (1964), 120 Ohio App. 213, 217. Further, Ohio courts have held that "recanting testimony is unreliable and should be subjected to the closest scrutiny." State v. Moore (1994),99 Ohio App.3d 748, 755, quoting Taylor v. Ross (1948), 150 Ohio St. 448, paragraph three of the syllabus.
 {¶ 38} In the instant case, Bell testified that she loved Spraggins and had been romantically involved with him for over six years, although she admitted they often fought and sometimes she was afraid of him. Bell also admitted that she filed other domestic violence complaints against Spraggins but claimed that she refused to testify against him in those cases. Bell explained that, although Spraggins was not the biological father of her son, he helped support him financially and she did not want him to get into any trouble. Thus, Bell's own testimony established that, not only was she a recanting witness, but it also established a motive for her untruthfulness.
 {¶ 39} Moreover, the testimony of Officers Finucan, Atterbury, and Packard corroborated Bell's version of the events as provided in her statement to police on July 8, 2002. Officers Finucan and Atterbury responded to the scene and observed that Bell appeared shaken and frightened of Spraggins. These officers also testified that Bell's verbal rendition of the events of July 8, 2002 was consistent with the written statement she gave to Det. Finucan a few hours later at the Beachwood Police Department.
 {¶ 40} Officer Packard testified that he investigated prior domestic violence complaints involving Spraggins and Bell, including the charge for which Bell was to appear in Berea Municipal Court. He further testified that Bell told him that Spraggins had threatened her if she testified against him.
 {¶ 41} Based on the totality of the evidence, the jury obviously concluded that Bell's recanting testimony was not reliable and chose to give more weight to her written statement and the testimony of the other witnesses at trial. Therefore, we conclude that the verdict is not against the manifest weight of the evidence.
 {¶ 42} Accordingly, the third assignment of error is overruled.
 {¶ 43} The judgment is affirmed.
Judgment affirmed.
Kenneth A. Rocco, A.J., and Michael J. Corrigan, J., concur.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.