# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-CT-00237-SCT

*JIMMIE ROACH*

*v.*

*STATE OF MISSISSIPPI*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 09/30/2004 |
| TRIAL JUDGE: | HON. BOBBY BURT DELAUGHTER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JULIE ANN EPPS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: W. GLENN WATTS |
| DISTRICT ATTORNEY: | ELEANOR J. PETERSON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED. THE JUDGMENT OF THE CIRCUIT COURT FOR THE FIRST JUDICIAL DISTRICT OF HINDS COUNTY IS REINSTATED AND AFFIRMED - 04/23/2009 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLSON, PRESIDING JUSTICE, FOR THE COURT**:

¶1.     Jimmie Roach was convicted by a Hinds County jury of possession of cocaine and possession of hydromorphone. Roach was sentenced as a Mississippi Code Section 41-29-147 second/subsequent drug offender and as a Section 99-19-81 habitual offender, as to both charges, and received consecutive sentences of forty-eight years for the possession-of-cocaine charge and sixty years for the possession-of-hydromorphone charge, respectively,

to be served in the custody of the Mississippi Department of Corrections. *See* Miss. Code Ann. § 41-29-147 (Rev. 2005) and Miss. Code Ann. § 99-19-81 (Rev. 2007). On direct appeal, a divided Court of Appeals reversed the convictions and sentences based on the majority's finding that the trial court had erred in denying Roach's motion to suppress the search warrant and its fruits inasmuch as insufficient information was provided to the magistrate who issued the search warrant. The State filed this petition for writ of certiorari asserting the opposite premise – that sufficient information was provided for a probable-cause determination, thus justifying the issuance of the search warrant. Upon a grant of certiorari, this Court reverses the Court of Appeals and reinstates and affirms the judgment of conviction and sentence of the Circuit Court for the First Judicial District of Hinds County.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT[1]

¶2.     On January 22, 2003, a confidential informant (CI) reported to Shannon Bullock, an investigator with the Hinds County Sheriff's Department, that he had witnessed the possession and distribution of cocaine at the home of Jimmie Roach. In turn, Investigator Bullock relayed this information to another Hinds County investigator, Richard Spooner. On the same day, Investigators Spooner and Bullock met with the CI to arrange a controlled buy

---

[1]While the facts set out under this heading are in large part gleaned from the Court of Appeals opinion (***Roach v. State***, 2007 Miss. App. LEXIS 538 (Miss. Ct. App. Aug. 21, 2007)), we will add relevant facts from the record as we deem necessary.

2

of crack cocaine from Roach at his residence. Investigator Spooner testified that following the purchase, field tests of the substance confirmed it was crack cocaine.

¶3.     The following day, January 23, 2003, Investigator Spooner signed and presented an Affidavit for Search Warrant to Hinds County Judge Mike Parker for the purpose of obtaining a search warrant for Roach's residence. Without relaying any information about the controlled buy one day earlier, Investigator Spooner, in the affidavit, characterized the CI as being a "truthful, credible, and a reliable source" who had furnished him with "information in the past." Attached to the Affidavit for Search Warrant was a document entitled "Underlying Facts and Circumstance Sheet," likewise signed by Investigator Spooner.  We set out here verbatim the language of the Underlying Facts and Circumstances:

> On the morning of Thursday, January 23, 2003,[2] I, Investigator R.W. Spooner, received information from a Confidential Informant that cocaine was being stored and sold from a residence located at 217 Foxboro Drive, Jackson, Mississippi. This Confidential Informant has observed cocaine being stored and distributed from this location within the last twenty-four hours and has identified the owner of this residence to be a black male known only to the Confidential Informant as "Jimmy Roach."
>
> This Confidential Informant, having furnished me with information in the past that has proven to be true and correct regarding the trafficking of illicit narcotics, is known by me to be a truthful, credible, and a reliable source of information.
>
> Based upon these underlying facts and circumstances, I, Investigator R.W. Spooner, request that a search warrant be issued for the search of the residence

---

[2]This is inaccurate.  While Investigator Spooner signed the Affidavit for Search Warrant and the attached Underlying Facts and Circumstance Sheet on Thursday, January 23, 2003, the date the information was received from the CI, as already noted, was January 22, 2003.

located at 217 Foxboro Drive in the First Judicial District of Hinds County, Jackson, Mississippi, for the search and seizure of cocaine, paraphernalia related to the trafficking of cocaine, and any monetary instruments derived from the trafficking of cocaine. This search to include any outbuildings, vehicles located on the property, and any safe or locked containers found on the premises.

On January 23, 2003, Judge Parker issued the search warrant for Roach's residence, and it was executed the same day. The return on the warrant, signed by Investigator Spooner, reveals an inventory of the items taken from Roach's residence. Investigator Spooner would later testify at the suppression hearing that, in the Underlying Facts and Circumstance Sheet, he did not include information about the controlled buy that took place prior to the issuing of the warrant for fear of revealing the identity of the CI. Investigator Spooner also testified that he had spoken with this particular CI on several occasions, each of which involved another officer's case.

¶4.    The search warrant executed on January 23, 2003, resulted in the detention and questioning of five people, including Roach and his wife, Petrice. During the course of the search, cocaine and hydromorphone were recovered. A small bag filled with crack cocaine was found in one of the couch cushions in the living room. Jamie Johnson, a Mississippi Crime Laboratory employee who is a forensic scientist specializing in the field of drug identification, testified at trial that this substance was cocaine with a weight of 1.86 grams.[3]

---

[3]Of course, Ms. Johnson could not, and did not, testify as to where this cocaine was recovered in the Roach residence, but the chain-of-custody evidence at trial revealed that this substance was recovered from the couch cushion in the living room.

4

In front of the refrigerator in the kitchen, a bag containing crack cocaine and 400 dosage units of Dilaudid was discovered.[4]

¶5.     During the course of the trial, defense witness John Henry Clark, Jr. testified that he possessed most of the drugs recovered from the Roach residence,[5] and that he had dropped the drugs during the course of his flight from the residence just after the police arrived. Clark admitted on cross-examination that in another case in Tennessee, he had falsely confessed to possession of illegal drugs, a crime with which another person subsequently was charged and convicted.

¶6.     Petrice and Jimmie Roach were tried together.  At the conclusion of the presentation of all the evidence, the trial court granted a directed verdict in favor of Petrice due to insufficient evidence that she was in possession of the drugs.  However, the jury rendered a guilty verdict against Jimmie Roach, who was sentenced to consecutive terms of forty-eight years for the cocaine and sixty years for the hydromorphone. The trial judge found Roach to be a drug recidivist pursuant to Mississippi Code Section 41-29-147 (Rev. 2005), and thus

_____

[4]Ms. Johnson identified the substances as being cocaine, with a weight of 17.12 grams, and 400 tablets of "hydromorphone also known under the trade name of Dilaudid."

[5]Since Clark testified that he had on his person approximately 400 Dilaudid pills and "a half ounce of crack [cocaine]," and since conversion tables reveal that there are 28.3495231 grams in one ounce, Clark in essence asserted that he in fact possessed the 400 Dilaudid pills and 17.12 grams of cocaine which were discovered in a bag in front of the refrigerator in the kitchen.

doubled the statutory maximum penalty.[6]  The trial judge likewise found Roach to be a habitual criminal pursuant to Mississippi Code Section 99-19-81 (Rev. 2007), directing that these sentences be served without the benefit of reduction or suspension of sentence or eligibility for parole or probation.  Aggrieved by his convictions and sentences, Roach timely appealed, and this case was assigned to the Court of Appeals.

## PROCEEDINGS IN THE COURT OF APPEALS

¶7.    On direct appeal, Jimmie Roach presented the following assignments of error to the Court of Appeals for its review: (1) that the trial court erred in denying his motion to suppress the search warrant and its fruits, (2) that the trial court erred in refusing to order the State to reveal the identity of its confidential informant, (3) that the trial court erred in failing to grant a mistrial after a defense witness was arrested after testifying, (4) that the trial court erred in refusing to grant Petrice Roach's motion for a directed verdict at the close of the State's case-in-chief, (5) that the evidence was insufficient to sustain his conviction, and (6) that his sentence violated the Eighth Amendment to the United States Constitution. The Court of Appeals found merit in Roach's contention that the trial court had erred in denying his motion to suppress the search and its fruits; therefore, the Court of Appeals reversed and

---

[6]Pursuant to Mississippi Code Section 41-29-139(c)(1)(D) (Rev. 2005), the maximum penalty for possession of ten (10) grams but less than thirty (30) grams of cocaine, a Schedule II controlled substance, is, *inter alia*, twenty-four (24) years imprisonment. Pursuant to Mississippi Code Section 41-29-139(c)(1)(E) (Rev. 2005), the maximum penalty for possession of forty (40) dosage units or more of hydromorphone, a Schedule II controlled substance, is, *inter alia*, thirty (30) years imprisonment.

remanded for a new trial. ***Roach v. State***, 2007 Miss. App. LEXIS 538, *2, ¶1 (Miss. Ct. App., Aug. 21, 2007).

¶8.     The Court of Appeals' majority found that the motion to suppress should have been granted on the basis that there was no substantial basis for probable cause in the magistrate's issuance of the warrant. ***Id***. at *23, ¶20.  The Court of Appeals took issue with the affidavit presented by Investigator Spooner to Judge Parker inasmuch as Investigator Spooner stated he had gotten credible information from the CI in the past without mentioning that his first encounter with the CI had occurred on the previous day, January 22. ***Id.***   The Court of Appeals stated:

> It is the second paragraph of Officer Spooner's affidavit that is particularly troubling. In that paragraph, Officer Spooner states that the CI in question had furnished him "with information in the past that has proven to be true and correct regarding the trafficking of illicit narcotics. . . ." However, Officer Spooner's testimony during the suppression hearing indicates that the CI had never provided him with information prior to January 22, 2003. Although Officer Spooner waffled and attempted to rectify the situation by asserting that the CI had provided him with credible information in the past that had not actually led to arrests, Officer Bullock's testimony clarified that it was apparent when Officer Spooner and the CI met on January 22, 2003, that the two had never met before. Officer Bullock also testified that, to his knowledge, Officer Spooner had never worked with the CI prior to January 22, 2003.
>
> There are two interpretations of the statement in the affidavit that the CI had furnished Officer Spooner with information in the past: (1) that Officer Spooner had a working relationship with the CI, who had given him reliable information that had been verified in the course of past cases; or (2) that Officer Spooner was referring only to the January 22 controlled buy when he stated that the CI had given him reliable information in the past. Of these two interpretations, we find that the issuing judge was far more likely to assume the first from Officer Spooner's averment in the affidavit. This Court is also of the opinion that that is most likely what Officer Spooner intended for the judge to believe.

7

*Id.* at **16-18, ¶¶15-16. The majority went further and stated that even if "in the past" referred to the controlled buy conducted on the previous day, "in the absence of any mention of the buy in the affidavit for the search warrant, it was impossible for Judge Parker to take the buy into the consideration of the totality of the circumstances in issuing the warrant." *Id.* at *19, ¶17. Furthermore, according to the Court of Appeals, if Investigator Spooner had included the controlled buy in the underlying facts and circumstances attached to the affidavit, then a substantial basis for probable cause "might" have existed. *Id.* at *23, ¶20.

¶9.    The Court of Appeals' dissenting opinion contends that the information contained in Investigator Spooner's affidavit was correct and thus sufficient to support a finding of probable cause. *Id.* at * 29, ¶31. Judge Myers, dissenting, wrote:

> The language of the affidavit that the majority finds troubling is the portion that the officer averred to have been given information from the informant "in the past" regarding drug trafficking. However, I find that the underlying facts in this case have shown that Officer Spooner did, in fact, receive and use information provided to him by the confidential informant to arrange a controlled buy of narcotics between the confidential information and Roach before submitting an affidavit for a warrant. This fact was testified to by Officers Spooner and Bullock and remains uncontested otherwise. Therefore, the statement that Officer Spooner made in his affidavit concerning his receiving information from this confidential informant "in the past" is correct and supportive of a finding of probable cause. It matters none that the "past" occurred within the same day. To hold otherwise, I think, would be punishing speedy police work in apprehending one involved in illicit drug crimes.

*Id.*

8

**DISCUSSION**

¶10.    The State of Mississippi petitioned this Court for a writ of certiorari on the sole issue of whether the magistrate had a substantial basis for concluding that probable cause existed. This Court granted certiorari to review the Court of Appeals' opinion that there was no substantial basis for a conclusion of probable cause by Judge Parker because Judge Parker's determination was based on false and/or omitted information provided by Officer Spooner, namely that the CI in this case had provided him with information "in the past." *Id.* at **17-18, ¶¶15-16.

> I.    **WHETHER THE TRIAL COURT ERRED IN DENYING THE MOTION TO SUPPRESS THE SEARCH WARRANT AND ITS FRUITS.**

¶11.    In *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983), the United States Supreme Court established a totality-of-the-circumstances test for determining whether probable cause exists for the issuance of a search warrant. This Court adopted the *Gates* totality-of-the-circumstances test in *Lee v. State*, 435 So. 2d 674, 676 (Miss. 1983). In *Gates*, the Supreme Court stated:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . [concluding]" that probable cause existed.

*Gates*, 462 U.S. at 238-39.  As aptly stated by the Court of Appeals, probable cause exists when the facts and circumstances within an officer's knowledge are "sufficient to justify a

9

man of average caution in the belief that a crime has been committed and that a particular individual committed it." *State v. Woods*, 866 So. 2d 422, 426 (Miss. 2003) (quoting *Strode v. State*, 231 So. 2d 779, 782 (Miss. 1970)). In *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978), the United States Supreme Court reviewed the question of whether a criminal defendant has the right, under the Fourth and Fourteenth Amendments, to challenge the truthfulness of factual statements made in an affidavit for a search warrant. In finding that the Constitution affords a defendant the right to such a challenge, the Supreme Court stated:

> [W]e hold that, where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at the hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if the probable cause was lacking on the face of the affidavit.

*Franks*, 438 U.S. at 155-56.

¶12.    As to the proper standard of review, this Court has stated:

> In reviewing a magistrate's finding of probable cause, this Court does not make a de novo determination of probable cause, but only determines if there was a substantial basis for the magistrate's determination of probable cause. *Smith v. State*, 504 So. 2d 1194, 1196 (Miss. 1987).

*Petti v. State*, 666 So. 2d 754, 757-58 (Miss. 1995).

¶13. The Court of Appeals found that "in the past" was the false information contained in the affidavit before the magistrate. Furthermore, when given two possible interpretations of "in the past," the first being that Investigator Spooner intended the judge to believe that he had received credible information from this CI "in the course of past cases," the second being that Investigator Spooner was referring to the controlled buy which occurred prior to giving the affidavit, the Court of Appeals found the first interpretation to be more reasonable. **Roach,** 2007 Miss. App. LEXIS 538, at *17-18, ¶¶15-16.

¶14. The State, in support of its counter-argument that a substantial basis existed for a determination of probable cause, submits that the controlled buy on the previous day served as corroboration of Investigator Spooner's statements made in his affidavit despite not having been in the statement of facts before the magistrate. Essentially, the State argues that the omission of information relating to the controlled buy on the previous day from the affidavit did not make Investigator Spooner's characterization of the CI's prior reliability any less truthful. According to the State, Investigator Spooner just as easily could have been referring to the January 22 controlled buy when he stated that the CI had given him reliable information in the past. Such was the contention of Judge Myers in his dissent. Investigator Bullock received information (from a CI previously known to Investigator Bullock) that the CI had witnessed the possession and distribution of drugs at Roach's residence. Investigator Bullock relayed the information to Investigator Spooner. Working in conjunction, the two officers arranged a controlled buy with this particular CI that resulted in the CI purchasing what was conclusively determined to be cocaine. This controlled buy served to corroborate

11

the CI's previous statement. This corroboration occurred prior to Investigator Spooner presenting his affidavit to Judge Parker for the issuance of the warrant. We thus respectfully disagree with the Court of Appeals when it states that "in the past" could not have referenced an event occurring only one day prior to the issuance of the warrant.

¶15. Further, the Court of Appeals majority stated that, had Investigator Spooner disclosed the controlled buy in his affidavit, there would have been a substantial basis for probable cause. The Court of Appeals majority flatly rejected Investigator Spooner's testimony that he was protecting the identity of the CI when he elected not to include that information in the facts attached to the affidavit. Moreover, the majority clearly favored Investigator Bullock's testimony that Investigator Spooner had his first contact with this CI on January 22, over that of Investigator Spooner that he had had contact with this CI on several occasions.

¶16. The Court of Appeals relied heavily on *Pipkens v. State*, 592 So. 2d 947 (Miss. 1991) in reaching this conclusion. The analogous facts in *Pipkens* and today's case relied upon by the Court of Appeals are that the CIs in both cases were described by the officers as having provided reliable information to them "in the past," when both officers had worked with the informants personally only on one occasion. However, *Pipkens* is easily distinguished from today's case. In *Pipkens*, no information was provided to the law enforcement agent that led to the confiscation of narcotics prior to the agent giving a sworn statement that he previously had received credible information from this particular CI. *Id*. at 951-952. In *Pipkens*, there was no controlled buy or any other independent, investigatory corroboration of the CI's statements, as there was in this case. *Id.* at 952. Therefore, the agent in *Pipkens* could not

12

possibly have been referring to any prior corroboration of the CI for the purpose of establishing reliability. However, in today's case, Investigator Spooner received information that Roach was in possession of cocaine, which was corroborated with a controlled buy. This all occurred prior to Investigator Spooner providing his underlying facts and circumstances attesting to the reliability of the CI.

¶17. Prior to *Pipkens,* this Court, in *Bevill v. State,* 556 So. 2d 699 (Miss. 1990) (*reversed on other grounds*), upheld the validity of a search warrant even where there were errors in the underlying facts. In *Bevill* this Court stated:

> It is true that subsequent events proved [the officer] erred in some of the statements set forth in the underlying facts, e.g. that the hair in the victim's hands was the same color as Bevill's, the similarity of Bevill's tennis shoes' footprints and the footprint at the scene, and bloodstain on the tennis shoes. Even so, at the suppression hearing [the officer] was cross-examined at great length by Bevill's attorney, and there was no showing that [the officer] intentionally misrepresented those facts, or made them in reckless disregard for the truth. Moreover, the remaining underlying facts clearly constituted probable cause for the issuance of the search warrants.

*Id.* at 713. We find similarities with *Bevill* in the present case in that there is no showing that Investigator Spooner intentionally misrepresented facts or made them in reckless disregard for the truth. Investigator Spooner described the CI as reliable in the past because he knew him to be a reliable CI used by the department on occasion. Furthermore, he was able independently to corroborate the CI's reliability when the controlled buy resulted in Roach selling cocaine to the CI. We do not equate Investigator Spooner's omission of the fact that there was a controlled buy the day before as a reckless disregard for the truth, given that Investigator Spooner testified he was protecting the identity of the CI.

13

¶18.    In sum, we find the Court of Appeals erred in reversing the trial court's judgment of conviction and sentence on this issue. Because the Court of Appeals understandably did not address certain assignments of error on appeal inasmuch as it reversed and remanded on this issue, we now proceed to discuss the remaining issues not previously discussed on appeal.[7]

---

[7]However, the Court of Appeals did address two other assignments of error. As to Roach's second assignment of error that the trial court erred in refusing to order the State to reveal its confidential informant, this Court adopts the reasoning of the Court of Appeals that, because the CI did not participate in the crime for which Roach was on trial, and was not an eyewitness to the crime, the trial court did not err in refusing to compel the State to reveal the CI's identity. *Roach*, 2007 Miss. App. LEXIS 538, at **24-25, ¶¶22-23. As to Roach's sixth assignment of error that his sentence violated the Eighth Amendment, we also agree with the Court of Appeals that Roach's sentences as a drug recidivist pursuant to Mississippi Code Annotated Section 41-29-147 (Rev. 2005) and as a habitual offender pursuant to Mississippi Code Annotated Section 99-19-81 (Rev. 2007) are constitutional. *Id*. at *26. As a general rule, sentences not exceeding the statutory limits are not disturbed on appeal. *Rogers v. State*, 928 So. 2d 831, 835 (Miss. 2006) (citing *Hoops v. State*, 681 So. 2d 521, 537 (Miss. 1996)). However, notwithstanding the statutory legality of an imposed sentence, a proportionality attack under the Eighth Amendment may be subject to the three-pronged proportionality analysis set out in *Solem v. Helm*, 463 U.S. 277, 292, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983) in cases where a threshold comparison of the crime committed to the sentence imposed leads to an inference of "gross disproportionality." *Ford v. State*, 975 So. 2d 859, 869 (Miss. 2008). On the other hand, a less-than-statutory-maximum sentence for a Section 99-19-81 habitual offender is the exception and not the rule. *Barnwell v. State,* 567 So. 2d 215, 221 (Miss. 1990). In today's case, Roach was convicted of two separate drug offenses, and one of his prior convictions used to enhance punishment under both Sections 41-29-147 and 99-19-81 involved a drug offense. Additionally, Roach's case is distinguishable from *White v. State*, 742 So. 2d 1126, 1134-38 (Miss. 1999), which involved the sentence enhancer found in Section 41-29-142 (drug dealing within certain distances of schools, churches and other public buildings and locations), and did not involve a defendant who was a drug recidivist and/or habitual offender, such as Roach.

14

## II. WHETHER THE TRIAL COURT ERRED IN FAILING TO GRANT A MISTRIAL AFTER A DEFENSE WITNESS WAS ARRESTED SUBSEQUENT TO TESTIFYING.

¶19. Roach argues that the arrest in open court of defense witness John Henry Clark, Jr. violated his Sixth-Amendment right to compulsory process because his right to present witnesses on his own behalf was violated. The State contends Roach waived his claim that the arrest of his witness, Clark, prejudiced his defense because Roach did not raise this issue at the trial level. According to the record, following Clark's testimony, the prosecutor moved the court to take Clark into custody. During a bench conference with the trial judge, defense counsel objected to the witness being taken into custody and moved for a mistrial based upon the fact that the arrest was being ordered as a result of the alleged questionable weight of the witness's testimony. The State argues the objection that "based on the weight of the testimony" is not the same objection raised in Roach's brief that the defense was prejudiced by the witness being taken into custody in front of the jury. The State relies on ***Burns v. State***, 729 So. 2d 203, 219 (Miss. 1998), which states "an objection at trial cannot be enlarged in a reviewing court to embrace an omission not complained of at trial."

¶20. In essence, Roach's objection is the same on appeal as his objection at trial that the arrest was a result of the trial judge usurping the jury by deeming that Clark's testimony was so incredible that it was worthy of a perjury charge and immediate arrest. From the record we can deduce that defense counsel believed that the arrest of a witness who had just testified for Roach would have a negative impact on the jury adverse to Roach. While the couching

15

of the issue for appellate review does not track verbatim the objection made at trial, we are satisfied that Roach has sufficiently preserved this issue for appellate review.

¶21.     To fully address this issue, it is critical to set the stage by citation to the record.  At the conclusion of the State's opening statements, and prior to the commencement of the State's case-in-chief, Roach, through counsel, appropriately reserved his right to make an opening statement after the State had rested its case-in-chief.  Thus, after the State had rested its case-in-chief, and prior to calling John Henry Clark, Jr., to testify in his case-in-chief, Roach, through counsel, made the following comments as part of his opening statements to the jury:

> And there was also a fellow by the name of John Henry Clark, Jr., who was in that house, but who ran out the back door and as he ran out the back door his package of drugs fell on the kitchen floor.  *He's going to come in here and he's going to tell you that those were his drugs.*  They are not Jimmie's drugs. They are not Petrice's drugs.  They didn't know anything about it.  *John Henry Clark is going to come in here and take the heat.  He's going to admit that those are his drugs.*

(Emphasis added).  Upon informing the jury in opening statements that John Henry Clark, Jr., would come into the courtroom and "take the heat" for the crimes with which Roach was charged, Roach's attorney announced before the jury that the first witness in Roach's case-in-chief would be John Henry Clark, Jr.  At this juncture, the trial judge wisely dismissed the jury and permitted Clark to be examined under oath by Roach's attorney outside the presence of the jury, thus revealing that Clark indeed was prepared to testify under oath that on the day in question, he had possessed part of the drugs which the State asserted belonged to Roach. The trial judge appropriately conducted his own examination of Clark and advised Clark of

16

his constitutional rights, including the right to remain silent, thus not incriminating himself, and his right to legal counsel. After a thorough examination of Clark, the trial judge found that Clark fully understood his constitutional rights and knowingly and voluntarily waived his right against self-incrimination and his right to counsel. The jury was then brought back, whereupon Clark was examined by Roach's attorney and by the prosecutor. On direct examination before the jury, Clark testified that as he ran out of the house, through the kitchen, he had dropped the bag containing the 400 Dilaudid pills and cocaine which law enforcement stated was found by the refrigerator when conducting the search of the house. On cross-examination by the assistant district attorney, Clark was questioned about a previous conversation he had with the assistant district attorney a few days prior to trial. The following colloquy occurred:

> [PROSECUTOR]: At that time I asked you if I could speak with you and you agreed to speak with me. Do you remember that?
>
> [CLARK]: Uh-huh.
>
> [PROSECUTOR]: Is that a yes?
>
> [CLARK]: Yes, sir.
>
> [PROSECUTOR]: Okay. Now at that time I also asked you if you had done anything like this before. Have you ever gone in and somebody else was charged with a crime and you claimed the drugs?
>
> [CLARK]: No, sir.
>
> [PROSECUTOR]: You have never done that before?
>
> [CLARK]: I think you asked me something about have I been to Tennessee.

17

[PROSECUTOR]: No, I didn't.

[CLARK]: Oh, you didn't?

[PROSECUTOR]: No. I didn't ask you that. But for the record you have never - - nobody else has ever been charged and you didn't go and claim the drugs?

[CLARK]: No, sir.

[PROSECUTOR]: You have never done that?

[CLARK]: No, sir.

¶22. At this point, the prosecutor requested a conference at the bench with defense counsel, whereupon the trial court put the jury in recess for lunch. In due course the jury returned, and the assistant district attorney's cross-examination of Clark continued:

[PROSECUTOR]: Mr. Clark, before we left you told the jury that you had never before gone and made a statement where someone else was charged with a crime. Is that correct?

[CLARK]: No, sir.

[PROSECUTOR]: That's not what you said earlier?

[CLARK]: Yeah, that's what I said.

[PROSECUTOR]: That's what you said earlier; right?

[CLARK]: But that was not correct.

[PROSECUTOR]: So you lied to the jury?

[CLARK]: Did I tell the jury that?

[PROSECUTOR]: The jury probably remembers that.

18

[CLARK]: Well, I just wasn't - - I wasn't for sure, but yeah, I said that I hadn't testified against someone like this.

[PROSECUTOR]: Okay. So I believe my question was: When someone else was charged with a crime have you ever gone in and claimed responsibility for it, something to that effect, and you told the jury, no you hadn't. Was that a correct statement?

[CLARK]: No, sir.

[PROSECUTOR]: Okay. So your earlier statement was not truthful?

[CLARK]: Right.

The next several pages of the trial transcript reveal that the assistant district attorney questioned Clark at length about Clark's acquaintance with a man named Mario Jones. Clark admitted that Jones had been charged with possession of approximately 7,000 Dilaudid pills in Tennessee and that he (Clark) had stated under oath in a deposition in Jones's case that he had purchased 6,700 Dilaudid pills, thus asserting ownership of most of the Dilaudid pills which had been found in Jones's possession. When Clark was asked about whether he had lied to a Tennessee assistant district attorney in Jones's case, the following occurred:

[CLARK]: I might have lied then, if I did.

[PROSECUTOR]: You might have lied then? And before you took that deposition you raised your hand and swore to tell the truth; didn't you?

[CLARK]: I wasn't in front of no judge.

[PROSECUTOR]: But you still raised your hand - -

[CLARK]: I might have did.

[PROSECUTOR]: You might have did. Okay. So you don't mind lying?

[CLARK]: Yeah, I mind lying, just depends.

[PROSECUTOR]: Okay. It depends on how much money you are being paid?

[CLARK]: No. I ain't said that now. It just depends on the lie and the situation.

[PROSECUTOR]: The lie and the situation?

[CLARK]: Yeah. I ain't going to say I won't lie.

. . . .

[PROSECUTOR]: So you do admit that you lied in this statement?

[CLARK]: Yes, sir.

¶23. Once Roach's attorney concluded his redirect examination of Clark, the assistant district attorney stated to the trial court in front of the jury, "We ask the witness be taken into custody." Roach's attorney requested a bench conference, whereupon the following occurred in the presence of, but outside the hearing of, the jury:

[ROACH'S ATTORNEY]: I just heard the prosecutor ask that the witness be taken into custody in front of the jury.

[THE COURT]: Uh-huh.

[ROACH'S ATTORNEY]: I don't think that's proper and I think it's grounds for a mistrial.

[THE COURT]: Why?

[ROACH'S ATTORNEY]: Because it goes to the weight of his testimony.

[THE COURT]: The whole defense is he committed the crime. Why shouldn't he be taken into custody?

[ROACH'S ATTORNEY]: Okay. Fair enough.

Roach, through counsel, then continued his case-in-chief by calling his next witness. It is interesting to note that while Roach's attorney stated that he felt that the prosecutor's act of requesting in front of the jury that Clark be taken into custody was "grounds for a mistrial," Roach's counsel never moved for a mistrial, nor did he request the trial court to rule on a motion for a mistrial. Once the trial judge explained to counsel at the bench conference that he felt that Clark had admitted to a crime and asked, "[w]hy shouldn't he be taken into custody," Roach's attorney replied, "[o]kay, [f]air enough."

¶24. There is no further explanation as to why the prosecutor called for Clark's arrest or why the trial judge ordered the arrest. The record does not note at what point Clark was arrested, nor does the record reveal whether Clark was arrested in the presence of the jury or outside of the presence of the jury. Nor do we know, assuming *arguendo*, that Clark was taken into custody before the jury, whether Clark was handcuffed or shackled before the jury. In fact, Roach does not assert that any restraining devices were put on Clark in the presence of the jury. We only know from the record that Roach's attorney, in his closing arguments before the jury, described "the arrest" as having taken place in front of the jury:

> Now what I don't understand is they [the State] call him a liar and they say that his testimony is incredible, is absolutely without credibility. However, that same testimony is what they are going to use [to] justify taking him into custody which occurred right here in front of you yesterday.

. . . .

> My point here is: How can the state, which is what these gentlemen represent, and these officers who testified yesterday, they represent, *how can they say, Mr. Clark, your testimony is credible, therefore, we are going to arrest you right here in front of this jury, we are going to take you into custody right here*

21

*in front of this jury and the next day, less than 24 hours they come in here and they tell you his testimony is not credible.*[8]

(Emphasis added).

¶25. Roach argues that the State arrested Clark for perjury, and that while the State has the right to charge a witness with perjury, the State does not have the right to arrest a witness in the presence of the jury. An arrest of a witness for perjury in the presence of the jury may constitute reversible error. **Brandon v. State**, 75 Miss. 904, 906, 23 So. 517, 518 (1898) (arrest of witness in presence of jury pursuant to statute providing for arrest of "palpable perjurers" was fatal error based on "very doubtfully balanced state of the testimony"). *See e.g.*, **Stephens v. State**, 592 So. 2d 990 (Miss. 1991) (finding no reversible error where bench warrant was issued for defense witness for perjury before conclusion of trial but outside of jury's presence); **Chase v. State**, 75 Miss. 502, 22 So. 828 (1897). There is no precedent on whether an arrest in the presence of the jury for an offense other than perjury may constitute reversible error.

¶26. At the bench conference outside the hearing of the jury, the trial judge stated, "The whole defense is [Clark] committed the crime. Why shouldn't he be taken into custody?" Thus, from the record, it is apparent that the trial judge was having Clark arrested, not for

---

[8]Prior to Roach's closing arguments, the State, in its closing arguments, had characterized as "absurd" Clark's testimony "that the drugs in the kitchen were his." Additionally, the assistant district attorney reminded the jury that even if the jury believed Clark's "absurd story" that the drugs found in the kitchen belonged to Clark, then "what about that crack that was found in the couch?" In other words, Clark did not attempt to claim the cocaine found in the couch.

22

perjury, but for admitting under oath to a felony offense, namely possession of 400 Dilaudid pills and a half ounce of crack cocaine. Also, it is important to remember that during his closing arguments to the jury, Roach's attorney stated, "how can [the State] say, Mr. Clark, your testimony is credible, therefore, we are going to arrest you right here in front of this jury, we are going to take you into custody right here in front of this jury and the next day, less than 24 hours they come in here and they tell you his testimony is not credible." Thus Roach's attorney claims that Clark was arrested because the State believed that his testimony was credible (meaning that the State believed Clark's testimony that the drugs attributable to Roach were indeed Clark's drugs). In his closing arguments, Roach's attorney argued to the jury the State's inconsistency for, on the one hand, requesting Clark's arrest because of his credible testimony of admitting to a crime, namely possession of the drugs, and on the other hand, coming before the jury in the State's closing arguments and claiming that Clark's testimony about the drugs belonging to him was "an absurd story."

¶27. Although not wholly applicable to today's case, we note that, even in cases where a defendant has appeared before the jury shackled or handcuffed, we have not found that the defense was prejudiced. As this Court stated in *Wilcher v. State*, 863 So. 2d 719 (Miss. 2003), "Generally, we have not found the right to a fair trial to have been abridged where the defendant has been seen in the courtroom by the jury in shackles or handcuffs." *Wilcher*, 863 So. 2d at 744 (quoting *Brown v. State*, 690 So. 2d 276, 287 (Miss.1996); *Lockett v. State*, 517 So. 2d 1317, 1329 (Miss. 1987)). Furthermore, if anything, Clark's arrest for possessing drugs recovered from the Roach residence bolstered the defense's theory that Clark, not

23

Roach, had been in possession of at least some of the drugs. Accordingly, this issue is without merit.

### III. WHETHER THE TRIAL COURT ERRED IN REFUSING TO GRANT PETRICE ROACH'S MOTION FOR A DIRECTED VERDICT AT THE CLOSE OF THE STATE'S CASE-IN-CHIEF.

¶28. At the conclusion of the presentation of all the evidence, the trial court granted a directed verdict in favor of Petrice Roach due to insufficient evidence that she was in possession of the drugs. However, Roach argues that because the trial court failed to grant his wife's motion for a directed verdict at the close of the State's case-in-chief, his Sixth- and Fourteenth-Amendment rights to compulsory process were violated. According to Roach, had the trial court granted the directed verdict at the close of the State's case-in-chief, Petrice, no longer facing the threat of prosecution, would have provided exculpatory testimony for Roach.

¶29. Roach understandably cites no authority for his standing to claim trial-court error for failure to grant a *co-defendant's* motion for a directed verdict. Instead, Roach cites an Illinois appellate-court decision which found that the defendant had not shown how he was prejudiced due to the trial court's failure to grant the codefendants' motion to dismiss until after the defense had rested. *People v. Ramirez*, 244 Ill. App. 3d 136, 613 N.E.2d 1116 (Ill. App. 1993).

¶30. Thus, attached to Roach's amended motion for judgment notwithstanding the verdict/new trial was Petrice's signed post-trial affidavit in which she stated, under oath, *inter alia*:

24

> At the conclusion of the state's case my attorney requested a dismissal of the charges against me, and that motion was denied with comment from the bench.
>
> During the case for the defense, I wanted to testify, but after consulting with my attorney and relying on his advise (sic) asserted my right not to do so. The reason I did not testify was that the charges were pending against me. If the charges against me had been dismissed at the conclusion of the state's case I would have testified on behalf of Jimmie Roach.
>
> If I had testified I would have confirmed and corroborated the fact that John Henry Clark "Pee Wee" was in the house at the time I exited the house and was gone from the house after law enforcement arrived and conducted their search. I would have also testified that at the time I left the house just prior to the arrival of law enforcement, there had been no discussion of drugs, and I had not seen any drugs or suspicious activity in the house while I was there. I would have also testified that I had never seen the drugs which were introduced as exhibits at the trial.

¶31. However, there is no need to consider the application of an Illinois appellate-court case in order to decide this issue.

¶32. The record reveals that after the State rested its case-in-chief, the trial court denied the respective motions for a directed verdict by Jimmie Roach and Petrice Roach. Immediately after the denial of these motions, the trial court took up an evidentiary issue concerning Roach's late production of photographs of the Roach residence taken the previous afternoon, as well as a schematic diagram of the floor plan of the house. Once the proceedings reconvened in open court before the jury, the attorneys for Roach and Petrice made their opening statements to the jury. In his case-in-chief, Roach called Clark, Cynthia Lawson (Petrice's sister, who was one of the four individuals standing in the yard when law enforcement officials arrived at the Roach residence on the day in question), and Joe Pate, also in the yard on the day in question.

25

¶33. After Pate testified, the trial judge was made aware of the fact that the defendants would most likely not call any additional witnesses, and that it was time for the defendants to announce to the court their intentions concerning whether they would testify. Outside the presence of the jury, the trial judge dutifully advised Roach and Petrice, *inter alia*, of their rights to testify or not testify, based on their constitutional rights against self-incrimination. In the end, both Roach and Petrice, through counsel, announced to the trial court that they would not testify in their own behalf. Thereafter, Roach, through counsel, announced in open court before the jury that that he rested his case-in-chief. Petrice, through counsel, then announced that she rested her case-in-chief. The trial court then informed the jury that they would be put in recess for the remainder of the day, to return the following morning.

¶34. After the jury left for the day, the trial court heard each defendant's motion for a directed verdict, and the trial court denied Roach's motion but granted Petrice's motion, thus releasing her. The trial judge then conducted a jury-instruction conference. Once court was reconvened the next morning, the trial judge read the instructions to the jury, the attorneys made their closing arguments to the jury, and the jury retired to deliberate, eventually returning guilty verdicts against Roach on both counts of the indictment.

¶35. Absent from this procedural scenario is any effort on the part of Roach, during the trial, to make a proffer to the trial judge, outside the presence of the jury, as to what Petrice would have testified to if called as a witness in Roach's case-in-chief. Also absent from this procedural scenario is any plea to the trial judge as to the perceived harmful effect on Roach of the trial judge's denial of Petrice's motion for a directed verdict at the close of the State's

26

case-in-chief.[9] Finally, also absent is any effort on Roach's part to call Petrice as a witness in open court during his case-in-chief and to ask her questions, the answers to which (in Roach's mind) would have been beneficial to his case. Roach could have called Petrice as a witness in his case-in-chief, notwithstanding the fact that he believed she would invoke her constitutional right to remain silent on some or even all of the questions propounded to her.

¶36.    In *Hall v. State*, 490 So. 2d 858 (Miss. 1986), the defendant attempted to call as a witness Arnold Jones, who was a charged accomplice in the armed robbery for which Hall was on trial. *Id.* at 859. The trial judge permitted Hall's attorney to question Jones outside the presence of the jury. *Id.* Jones refused to answer questions concerning the robbery, but Jones did answer certain questions describing Wayne Lampkin as being involved in the robbery. Hall's defense was that Lampkin was the perpetrator of the robbery. *Id.* The trial judge refused to allow Hall the opportunity to put Jones on the witness stand in front of the jury "to either answer questions or claim his right to remain silent in the presence of the jury." *Id.* On appeal, this Court reversed Hall's conviction and remanded this case for a new trial, stating:

---

[9] If Roach was concerned about the perceived negative effect of the trial judge's denial of Petrice's motion for a directed verdict at the close of the State's case-in-chief, thus not "freeing her up" to be able to testify as a witness in his case-in-chief, Roach had a golden opportunity to convince the trial judge at that very moment to reconsider his denial of Petrice's motion when the trial judge stated: "Well, it's (the evidence) certainly much thinner concerning your client (Petrice), but I think it's sufficient to overcome the motion for a directed verdict. I will revisit the issue, certainly, when it comes time for a peremptory instruction to be requested."

> The right of a defendant to call a witness when it is known that the witness would claim the Fifth Amendment right to refuse to answer questions has been previously addressed by this Court. In *Stewart v. State*, 355 So. 2d 94 (Miss. 1978), we held it was reversible error to refuse to permit the defendant to call a witness to the stand and question him in the presence of the jury even though it had been demonstrated that the witness would refuse to answer most of the questions on grounds of self-incrimination. *See also*, *Coleman v. State*, 388 So. 2d 157 (Miss. 1980). We are of the opinion Jones' testimony describing the appearance and characteristics of Wayne Lampkin was relevant to the determination of who committed the robbery. Jones should have been permitted to testify in the presence of the jury and either answer those relevant questions or claim his Fifth Amendment rights.

*Hall*, 490 So. 2d at 859. *See also* **Edmonds v. State**, 955 So. 2d 787, 793-95 (Miss. 2007).

¶37. In the end, we find that the trial court will not be placed in error on an alleged untimely grant of a motion for a directed verdict in favor of a codefendant, based on the other codefendant's compulsory-process argument under the Sixth and Fourteenth Amendments. This issue is thus without merit.

### IV. WHETHER THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN ROACH'S CONVICTION.

¶38. Roach argues that there was insufficient evidence for establishing his constructive possession of the cocaine and hydromorphone. He argues that, while there is a presumption of possession against the owner of premises where contraband is recovered, that presumption is rebutted when there are no "additional incriminating facts" connecting the defendant to the contraband. *Powell v. State*, 355 So. 2d 1378, 1379 (Miss. 1978). The rule, as stated in *Powell* is as follows:

> The correct rule in this jurisdiction is that one in possession of premises upon which contraband is found is presumed to be in constructive possession of the articles, but the presumption is rebuttable. We have held that where contraband

28

is found upon premises not in the exclusive control and possession of the accused, additional incriminating facts must connect the accused with the contraband. Where the premises upon which contraband is found is not in the exclusive possession of the accused, the accused is entitled to acquittal, absent some competent evidence connecting him with the contraband. ***Sisk v. State***, 290 So. 2d 608 (Miss. 1974).

***Id.*** at 1379.

¶39.   The State cites several facts from the record establishing exclusive control and possession of the contraband by Roach. No one else was found in the house; Roach's wife was outside the residence when the officers arrived. Investigator Spooner testified that, in addition to Petrice Roach, three other individuals were standing in the front yard, and that all of these individuals denied possession of the drugs. Roach was found "within arm's reach" of the bag of crack cocaine found in the couch cushion, and in close proximity to the bag containing cocaine and  hydromorphone discovered on the kitchen floor in front of the refrigerator. No one else was found inside the house near the couch where cocaine was found. "[T]here must be sufficient facts to warrant a finding that the defendant was aware of the presence and character of the particular [contraband] and was intentionally and consciously in possession of it." ***Williams v. State***, 971 So. 2d 581, 587 (Miss. 2007) (quoting ***Curry v. State***, 249 So. 2d 414, 416 (Miss. 1971)).

¶40.   Based on the record, we find that the evidence was legally sufficient to establish constructive possession of the contraband by Roach.  In the end, we must consider the appropriate criteria concerning the sufficiency of the evidence. On this point, we have stated:

> Should the facts and inferences considered in a challenge to the sufficiency of the evidence "point in favor of the defendant on any element of the offense

29

with sufficient force that reasonable [jurors] could not have found beyond a reasonable doubt that the defendant was guilty," the proper remedy is for the appellate court to reverse and render. *Edwards v. State*, 469 So. 2d 68, 70 (Miss. 1985) (citing *May v. State*, 460 So. 2d 778, 781 (Miss. 1984)); *see also Dycus v. State*, 875 So. 2d 140, 164 (Miss. 2004). However, if a review of the evidence reveals that it is of such quality and weight that, "having in mind the beyond a reasonable doubt burden of proof standard, reasonable fairminded [jurors] in the exercise of impartial judgment might reach different conclusions on every element of the offense," the evidence will be deemed to have been sufficient. *Edwards*, 469 So. 2d at 70; *see also Gibby v. State*, 744 So. 2d 244, 245 (Miss. 1999).

*Bush v. State*, 895 So. 2d 836, 843 (Miss. 2005).

¶41.   From the record before us, and in applying the appropriate criteria concerning an attack on the legal sufficiency of the evidence, there was sufficient evidence before the jury to find beyond a reasonable doubt that on the day in question, Roach knowingly, willfully, unlawfully, and feloniously had in his possession cocaine in an amount greater than ten grams but less than thirty grams; and that Roach knowingly, willfully, unlawfully, and feloniously had in his possession hydromorphone in an amount greater than forty dosage units.  Accordingly, this argument is without merit.

**CONCLUSION**

¶42.   For the reasons stated, the judgment of the Court of Appeals is reversed and the judgment of conviction and sentence of the Circuit Court for the First Judicial District of Hinds County is reinstated and affirmed.

¶43.   **THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED.  THE JUDGMENT OF THE CIRCUIT COURT FOR THE FIRST JUDICIAL DISTRICT OF HINDS COUNTY IS REINSTATED AND AFFIRMED.   COUNT I: CONVICTION OF POSSESSION OF A CONTROLLED SUBSTANCE (COCAINE) AND SENTENCE OF FORTY-EIGHT (48) YEARS IN THE CUSTODY OF THE**

**MISSISSIPPI DEPARTMENT OF CORRECTIONS, AS AN HABITUAL OFFENDER, AFFIRMED. COUNT II: CONVICTION OF POSSESSION OF A CONTROLLED SUBSTANCE (HYDROMORPHONE) AND SENTENCE OF SIXTY (60) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AS AN HABITUAL OFFENDER, AFFIRMED. SENTENCES SHALL RUN CONSECUTIVELY.**

**WALLER, C.J., DICKINSON, RANDOLPH, LAMAR AND PIERCE, JJ., CONCUR. GRAVES, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED IN PART BY GRAVES, P.J. CHANDLER, J., NOT PARTICIPATING.**

**KITCHENS, JUSTICE, DISSENTING:**

¶44. Today's decision marks the end of a poor performance by our state's criminal justice system in the case of this defendant. Roach may very well be guilty of the crimes of which he is accused, but our fidelity to the law must transcend our attention to specific results. "It is not enough to justify a conviction that the defendant be guilty. He has a right to be tried in accordance with the rules of law." *Rutherford v. United States*, 258 F. 855, 863 (2nd Cir. 1919). Today's ruling falls short of that charge, and therefore, I respectfully dissent.

## I.

¶45. Consistent with the Fourth Amendment to the U.S. Constitution and its counterpart in the Mississippi Constitution of 1890 (Article 3, Section 26), a police officer seeking judicial authority to conduct a search must submit his assertions concerning probable cause to "a neutral and detached magistrate," who is in a more objective position to judge the evidence dispassionately than "the officer engaged in the often competitive enterprise of ferreting out crime." *Johnson v. United States*, 333 U.S. 10, 14, 68 S. Ct. 367, 92 L. Ed. 436

31

(1948). When the magistrate's judgment has been satisfied that probable cause exists, a search warrant should issue. Under limited circumstances, a search will be judged valid, even when the search warrant itself is not. *See United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984) (announcing the so-called good-faith exception to the warrant requirement).

¶46.    When the police officer's search warrant contains false information of a material nature, any warrant predicated upon it is rendered invalid. *Leon* notwithstanding, *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978), still stands for the proposition that when a defendant "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit," that defendant is entitled to a hearing to determine whether the affidavit did, in fact, include false information. *Id.* at 155-56. At that hearing, if the defendant shows by a preponderance of the evidence that information within the warrant application is false, then that portion of the affidavit is stricken, and the remainder of the affidavit is examined to ascertain whether probable cause survives. *Id.* at 156.

¶47.    At this juncture, we need not determine whether the search warrant in this case should be held invalid. What we should do, though, is state the obvious: that Roach has made a substantial showing that the police applied for this search warrant on the basis of information that they knew, or should have known, was wrong, namely, that the confidential informant had a proven history of providing reliable information *to the applying officer*, who had met him only the day before. Whether this patently inaccurate and clearly material representation

32

rises to the level of perjury, and whether exclusion of that information invalidates the magistrate's finding of probable cause, are questions not now before this Court. But applicable constitutional guarantees and basic considerations of fairness demand that we now remand this case for such determinations to be made in circuit court.

**II.**

¶48.    But this case's most flagrantly egregious moment was saved for the trial itself, when the trial judge allowed the defendant's most important witness to be arrested in front of the jury.

¶49.    If the prosecution had sought to introduce character evidence of a prior arrest against this witness, the trial judge would have been obligated to reject it. Miss. R. Evid. 609(a)(1) (limiting attacks against a nonparty witness's credibility to crimes of which he has been convicted). And if the prosecution had attempted to compel the witness to submit to an in-court re-enactment of such an arrest, the trial judge likewise would have been duty bound to refuse the request. *See Goggins v. State*, 529 So. 2d 649, 653-54 (Miss. 1988) (in-court re-enactment of an identification was inappropriate because the performance carried no probative value and could prejudice the jury). Nevertheless, the trial judge exceeded both of those limitations and assented to the dramatic, in-court arrest of a defense witness in the presence of the jury. How the trial judge could have believed that Roach's right to a fair trial, by a jury that was influenced only by applicable law and credible, relevant evidence, was not negatively impacted by this spectacle is beyond the comprehension of any rational mind.

33

¶50. The infirmity of in-court arrests is not a phenomenon of first impression in Mississippi. More than a century ago, in *Chase v. State*, 75 Miss. 502, 22 So. 828 (1897), this Court considered the misdemeanor conviction of a defendant who, like Roach, watched as the trial judge allowed a defense witness to be arrested in court and in full view of the jury. Our judicial forebears affirmed the conviction, but only because the trial judge himself acknowledged that his conduct had amounted to reversible error and afforded the defendant the opportunity to impanel a new jury, which defense counsel waived. *Id.* at 504-05. "The conduct of the judge of the lower court," the *Chase* justices noted, "was open, manly and most honorable." *Id.* at 505.

¶51. In 1927, this Court again considered the kind of unusual circumstances that present themselves in the instant case. In reviewing a trial overseen with less magnanimity than that on display in the case of Chase, this Court reversed the conviction of a defendant during whose trial the sheriff arrested a defense witness at the behest of the trial judge. *Johnson v. State*, 141 Miss. 49 (1927). Speaking for a unanimous Court, Justice Anderson wrote that the trial judge's actions violated the ancient and well-established prohibition against judges commenting on the credibility of witnesses.

> We can hardly conceive of how a witness could be more thoroughly discredited than by the action of the trial judge in ordering his arrest as he is leaving the witness stand, whether his arrest be upon the ground that he had committed perjury on the witness stand or has been guilty of some crime elsewhere.

*Id.* at 54.

¶52. The statute upon which the *Johnson* Court based its decision lives on today at Section 99-17-35 of the Mississippi Code, which commands that a trial judge "shall not sum up or comment on the testimony, or charge the jury as to the weight of the evidence . . . ." Miss. Code Ann. § 99-17-35 (Rev. 2007). On these grounds, we have reversed convictions ruled over by judges who were far kinder to witnesses. *See Stallworth v. State*, 310 So. 2d 900 (Miss. 1975) (holding that a judge's warning to a witness who rendered testimony inconsistent with his statement to police constituted impermissible comment on the evidence). But where the episode ends in the arrest of a defense witness in the jury's presence, the question is far less difficult. Short of ordering the immediate assembly of a firing squad, one has a hard time imagining a more powerful comment on a witness's credibility than the judge's having him shackled and led away from the immediate environs of the very people who were there to assess that credibility: the jurors.

¶53. Our state is among a multitude of jurisdictions in which this precise problem has arisen in courtrooms. And across the centuries, with near-universal voice, our sister jurisdictions have rejected the notion that such a sideshow does not require reversal. One state's high court addressed this problem long ago in this way:

> It is clear to us that the remarks of the prosecuting attorney and the action of the court in ordering the witness into the custody of the sheriff was most prejudicial to the defendant. The action of the court informed the jury that it was satisfied that the witness had committed either perjury or [another crime], which very much discredited him in the minds of the jury as well as prejudiced the defendant's case. It is a well-recognized fact that jurors as a rule are quick to discern the opinion of the trial court as to the guilt or innocence of a defendant, or his opinion as to the truthfulness of a witness, and if a juror concludes from the act or suggestions of the court that it disbelieves a witness,

35

it is sure to have a prejudicial effect against the litigant calling the witness . . . ."

*State v. Clark*, 27 Idaho 48, 56-57, 146 P. 1107 (1915). *See also **Burke v. State**, 66 Ga. 157 (1880); **People v. Wolcott**, 51 Mich. 612, 17 N.W. 78 (1883); **Huff v. Territory**, 15 Okla. 376, 85 P. 241 (1905); **State v. Swink**, 151 N.C. 726, 66 S.E. 448 (1909); **McDonough v. Blossom**, 109 Me. 141, 83 A. 323 (1912); **Blackwell v. State**, 76 Fla. 124, 79 So. 731 (1918); **People v. Filipak**, 322 Ill. 546, 153 N.E. 673 (1926); **Knox v. State**, 111 Tex. Crim. 601, 13 S.W.2d 378 (1929); **Lile v. State**, 186 Ark. 483, 54 S.W.2d 293 (1932); **People v. Harris**, 8 N.Y.S.2d 521, 255 A.D. 1011 (N.Y. App. Div. 1938); **State v. Kish**, 4 Ohio App. 3d 252, 448 N.E.2d 455 (1981); **Williams v. State**, 629 P.2d 54 (Alaska 1981); **State v. Ferrell**, 186 W. Va. 307, 412 S.E.2d 501 (1991); **Johnson v. State**, 352 Md. 374, 388, 722 A.2d 873 (1999) (citing favorably **Long v. State**, 31 Md. App. 424, 432, 356 A.2d 588 (1976)); **Rutherford v. United States**, 258 F. 855 (2nd Cir. 1919); **McNutt v. United States**, 267 F. 670 (8th Cir. 1920); **United States v. Bates**, 468 F.2d 1252 (5th Cir. 1972).

¶54. And though, ultimately, any designation of error rests with the trial judge, we should not let this case pass from our chambers without also noting, with disapproval, the behavior of the prosecutor. A prosecutor "may prosecute with earnestness and vigor – indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones." *Berger v. United States*, 295 U.S. 78, 88, 55 S. Ct. 629, 79 L. Ed. 1314 (1935). The Rules of Professional Conduct further establish that "[a] prosecutor has the responsibility of a minister of justice and not simply that of an advocate. This responsibility carries with it

36

specific obligations to see that the defendant is accorded procedural justice and that guilt is decided upon the basis of sufficient evidence." Miss. R. Prof'l Conduct 3.8 cmt.

¶55. That responsibility was compromised in this case. And for what? The State adduced evidence that was more than ample to convict Roach in a fair trial. Not satisfied with presenting a strong case in a straightforward and professional manner, this prosecutor permitted his zeal for a conviction to overcome his ethical obligations, and in doing so, violated our state and national constitutions and unfairly tainted these proceedings. Zealousness is a worthy quality in a prosecutor; but when prosecutorial zeal is allowed to undermine a defendant's constitutional rights, not only is justice endangered, but also the people by thrusting upon appellate courts the duty to reverse convictions of some persons from whom the public should be protected. Such shortsightedness is unbecoming a public servant, particularly one entrusted with the vital role of a prosecutor.

¶56. The same fault lies with the trial judge in this case. Generally speaking, this Court has made very clear that a trial judge commits reversible error when he or she takes any action that will "cause the jurors to question [the court's] impartiality toward the parties." *Jasper v. State*, 759 So. 2d 1136, 1140 (Miss. 1999). More specifically, we have held that, even in civil matters, a trial judge clearly invades the province of the jury by commenting on a witness's credibility and that such comments are "tantamount to informing the jury that the witness is being deceitful and evasive." *MIC Life Ins. Co. v. Hicks*, 825 So. 2d 616, 625 (Miss. 2002). The judge's obligation to remain neutral in word and deed is even stricter in criminal cases. "It is the supreme duty of a trial judge, in so far as it is humanly possible, to

37

hold the scales of justice evenly balanced between the litigants." *West v. State*, 519 So. 2d 418, 422 (Miss. 1988). "[P]otential prejudice lurks behind every intrusion into a trial made by a presiding judge. The reason for this is that a trial judge's position before a jury is overpowering. His position makes his slightest action of great weight with the jury." *Id.* at 423 (quoting *United States v. Hickman*, 592 F.2d 931, 933 (6th Cir. 1979)). By conceding to the arrest of a witness in front of the jury, the trial judge recklessly compromised his duty of neutrality in a fundamental way.

¶57.    Roach may indeed be guilty of the crime of which he was accused. And if this is so, he should be held accountable. But if he is to suffer the judgment and consequences of guilt, then American justice demands that this must occur in the context of a fair trial, propelled by evidence from a constitutionally valid investigation, conducted by an ethically sensitive prosecutor, and overseen by a neutral trial judge. Anything less not only prejudices defendants, but indeed, prejudices the credibility and trustworthiness of the criminal justice system itself. Under such circumstances, this Court should reverse and remand for a judgment fairly rendered.

**GRAVES, P.J., JOINS THIS OPINION IN PART.**

38